MASTELL v. SALO.

Opinion delivered November 3, 1919.

1. APPEAL AND ERROR—RAISING ISSUES IN DISPUTE—LABOR UNIONS.—
   In a controversy between an operator of a mine and the union,
   over the payment of sum claimed to be due a union member, it
   is proper for a committee of the union to raise the issues involved,
   where he ratifies the same.

2. ARBITRATION—BINDING EFFECT.—Where a controversy has been
   submitted to arbitration, the finding of the arbitrator on the
   question submitted is final, in the absence of a showing of fraud
   or gross mistake.

3. MASTER AND SERVANT—SUBMISSION OF STATEMENTS TO SERVANT—
   AMOUNTS DUE.—An employee was a member of a labor union
   and as such entitled to a sum of money for certain work. The
   employee was ignorant of this until a committee of the union
   told him, when he made the claim. Meantime the employer had
   submitted to him certain statements of accounts due, omitting the
   disputed sum. Held, the employee could recover the same.

4. EVIDENCE—FORMER COMPROMISE.—Where one adjusts a contro-
   versy by paying the sum claimed or any other, such fact can not
   be proved against him in a similar subsequent controversy.

Appeal from Sebastian Circuit Court, Greenwood
District; *Paul Little,* Judge; reversed.

*Geo. W. Johnson,* for appellant; *A. M. Dobbs,* of
counsel.

1. Instruction No. 1 given for plaintiff is erroneous,
as it assumes that all of Salo's work was done under the
contract of November 2, 1916, with the United Workers
of America. It is misleading and evades the province
of the jury. No. 2 is open to the same objection. 128
Ark. 535.

2. The award is too indefinite to be enforced and
the instruction based on it was misleading. 1 Ark. 206.

3. Instruction No. 1 asked by defendant should have
been given. The rendition of an account and its reten-
tion by the party to whom given without objection for a
reasonable time gives it the effect of an account stated.
This issue was raised by the pleadings and the proof jus-
tified its submission to the jury. 41 Ark. 502; 16 *Id.* 202;
68 *Id.* 534.

4. Instruction No. 2 for defendant should also have been given to complete No. 1 given for plaintiff. 98 Ark. 17; 120 *Id.* 206.

5. The court erred in admitting the testimony of Dan McSpadden and Dee Coker to the effect that Mastell had previously paid yardage in this mine under similar circumstances. 130 Ark. 491. Compromises, as here, are always encouraged by the courts. 85 Ark. 337. The undisputed evidence shows that Salo and Mastell had an understanding wherein Salo agreed to drive the room on the tonnage basis and receive pay on that basis without objection. The evidence does not support the verdict; the burden was on plaintiff and he has not discharged it, as it was his duty to show how much work he did under the contract. The award, if valid, determined nothing under the contract of November 2, 1916. Cases *supra.*

*Covington & Grant,* for appellee.

1. There was no error in the instructions given or refused.

2. Plaintiff did the work for which he claims compensation. According to the contract the United Mine Workers should be paid for the work and Salo did not waive his right to compensation. The arbitration settled his rights, as there was no fraud or mistake or bad faith. 83 Ark. 136; 88 *Id.* 213; 36 *Id.* 327; 3 *Id.* 324; 76 *Id.* 153.

3. The court properly refused defendant's request No. 1. There was no account stated. 74 Ark. 277; Anderson's Law Dictionary 17. Instruction No. 2 was properly refused, as it was covered by No. 1.

4. There was no error in admitting testimony. 130 Ark. 491; 95 *Id.* 449; 98 *Id.* 421; 104 *Id.* 466. There is no evidence that the payment of yardage by Mastell was on account of compromises with employees. The judgment is right and should be affirmed.

HUMPHREYS, J. Appellant operates a coal mine, and, upon opening it up, he contracted with the United Mine Workers of America (of which appellee was a member) to employ only members of the union in his mining

operations and to settle any controversies which might arise in accordance with the provisions of a certain contract known as the Interstate Joint Agreement, and hereafter referred to as the joint agreement, the same being the joint contract entered into between the United Mine Workers of America, District No. 21, and the coal operators' association.

The coal operators' association is an organization composed of coal operators in District No. 21 (embracing the States of Arkansas, Oklahoma and Texas) created by the operators for the purpose of dealing with the union. Appellant did not belong to the operators' association, but dealt with the union as an independent operator, his own contract with the union providing, however, that the joint agreement should govern in the adjustment of all controversies between himself and the miners employed by him.

This agreement contained provisions for the arbitration of all controversies between the operators and the miners, and appellee's insistence was that under its terms it was appellant's duty to pay yardage for what is known as "entry work" in his mine. This work is explained as follows: When appellee went to work in the mine for appellant, he was to be paid so much per ton for each ton of coal mined in his working place. If appellant should later decide to convert appellee's working place into an entry through which to haul coal mined by other miners from other working places in the mine, it then became the duty of the appellant to pay, in addition to the tonnage, a yardage of $2.49 per yard according to the terms of the joint agreement. This would compensate appellee for removing the rock, dirt, etc., from the place. Appellee worked in this place until he had mined the coal out of a place 127 feet long, and at this time appellant decided to convert it into an entry and turn rooms off from appellee's place and to haul coal out of those rooms through appellee's working place.

Appellant sold the mine, and after he had done so it was brought to the attention of the officers of the local

to which appellee belonged that appellee had not been paid his yardage, and upon demand therefor appellant refused to pay it. A conference was held between appellant and appellee and the officers of the union having the matter in charge, and it was then agreed that their differences should be arbitrated; and the parties accordingly prepared and submitted a statement in writing of their respective contentions to the president of District No. 21, United Mine Workers of America, this action being taken pursuant to the terms of the joint agreement. There appears to have been no controversy as to the amount of the yardage, nor its price per yard, the sole dispute being whether appellant should pay it at all or not. The district president made a finding in writing in which he held that appellant should pay the yardage. Payment was refused, and this suit was brought to enforce payment, and this appeal has been prosecuted from a judgment finding appellant liable for the yardage.

(1) It is first insisted that appellee did not raise the issue involved in this lawsuit and that the pit committee of the union which did raise it had no right to do so. This statement may be answered, however, by saying that the pit committee assumed to act for appellee as one of its members, and he has adopted and ratified their action. It is true he did not testify at the trial, but that fact is explained by the statement that he is an illiterate Italian who does not speak the English language and he was present at the trial.

(2) It is next insisted that the so-called award is unenforceable, as it decided nothing and did not determine the amount due appellee. It has been shown, however, that liability for the yardage was the only question to be determined, and, that having been decided in appellee's favor, the sum due could be arrived at by a calculation which any one could make.

Appellant contended at the trial below that he had a private agreement with appellee whereby appellee waived his right to charge yardage. This issue was not submitted for arbitration, but that defense was made at the

trial in the court below, and the court told the jury that if there was such a private agreement appellee could not recover.

It may here be said that this instruction disposes of appellant's argument that an individual employee and his employer are not restricted in their right to contract with each other by the fact that the rules of the union to which the employee belonged prohibited the employee from making that contract and imposed a penalty for doing so. The jury must necessarily have found there was no such private agreement between appellant and appellee. Nor is it important to consider here the duty of appellant to submit controversies for arbitration as provided in the joint agreement, or the effect of his failure to do so, as it is undisputed that he did submit the controversy to arbitration, and the court therefore properly told the jury that the finding of the arbiter on the question submitted was final, in the absence of a showing of fraud or gross mistake.

(3) The testimony was to the effect that for a long period of time appellant had rendered statements twice each month to appellee showing the sums due him, and that none of these statements included the yardage now claimed, although they covered the period of time during which that work was performed, and an instruction was asked which told the jury that if they so found the failure to object to the accounts so rendered would be regarded as an admission of their correctness by appellee. It was shown in appellee's behalf, however, that he did not know that he was entitled to this yardage until his attention was called to that fact by the pit committee, whereupon he then claimed it and now claims it, and the instruction was properly refused because it took no account of the issue that appellee did not know when he received these statements that he had the right to claim the yardage.

Over appellant's objection the court permitted McSpadden and Coker, officers of the miners' union who acted for appellee in the attempt to adjust the claims for yardage with appellant, to testify that appellant had pre-

viously paid yardage in his mine after a controversy had arisen with other miners in which the circumstances were similar to the case at bar. The admission of this testimony is defended by appellee upon the ground that the payment of entry yardage at appellant's mine was required both by contract and by custom, and that the testimony objected to tended to show that fact. Appellant admitted that he had twice made such payments, but he denied that he was liable therefor in either case, and testified that he had done so, not because he was liable, but to prevent the possibility of a strike. There was no connection between the two previous controversies and the one with appellee, and it was, therefore, improper and prejudicial to admit testimony in regard to them. One may adjust a controversy by paying the sum claimed or any other sum without thereby becoming liable to have the fact of the adjustment proved against him in similar subsequent controversies, and for the error in admitting that testimony the judgment is reversed and the cause will be remanded for a new trial.