MOODY v. MODEL WINDOW GLASS COMPANY.

Opinion delivered September 27, 1920.

MASTER AND SERVANT—LIABILITY FOR WAGES.—Where, in view of an agreement between the window glass manufacturers and window glass workers, under which plaintiff had been operating its plant, it was reasonably understood by defendants, glass workers employed by plaintiff, that they would be given employment from a certain date or would be paid $20 a week until the plant was in operation, and defendants paid their own transportation and expenses from California to plaintiff's plant in Arkansas,

but remained for five weeks until plaintiff's plant opened, plaintiff can not recover from defendants the $40 paid to each of them for two weeks, and they are entitled to recover $20 a week coming to each of them for three weeks under the agreement.

Appeal from Sebastian Circuit Court, Fort Smith District; *John Brizzolari,* Judge; reversed.

*Covington & Grant,* for appellant.

The rules of law in this case are too well settled to cite the authorities, and the evidence shows that appellee is indebted to Gerard and Saladin in the sum of $100, and the court erred in rendering judgment against appellant and his associates, and the case should be reversed.

*W. H. Dunblazier,* for appellee.

Appellee was not responsible for appellant coming to Fort Smith as alleged, and if so appellee was not liable on the counterclaim. The law is too well settled to need citation of authorities. The burden was on appellant to show there was a custom, understanding or agreement between appellee and his organization which entitled to $20 a week while unemployed. The court found there was no such custom, and the evidence sustains the finding.

SMITH, J. This cause was heard by the court below sitting as a jury, and the parties now agree that the sufficiency of the testimony to support the court's finding presents the only question in the case.

According to the undisputed testimony, it appears that appellee operated its window glass factory during the year 1917 at Fort Smith under what was known as the national agreement, this being a general contract entered into between the Window Glass Manufacturers of the United States and the National Window Glass Workers. Article 5 of this agreement reads as follows: "Article 5. Any company hiring a member and said member upon arriving and reporting for duty, finding no vacancy existing or plant not ready to operate, as per notification, shall pay said member at the rate of $20 per

week until place is vacant or plant in operation, or, at the option of the member, said company shall defray all expenses incurred by said member from the time he left his home or place of starting until his return to destination.''

Appellee's manager, whose name was Zenor, had, prior to becoming manager, been a member of the Glass Workers' Union, and was familiar with this article 5, and knew that it entered into and was a part of the contract of employment between members of the Glass Workers' Union and companies operating, as appellee did, under this national agreement.

Appellants had been employed at appellee's plant during the year 1917, but went to California when the plant closed down, and were at work there when appellant Gerard received from appellee the following letter:

"Fort Smith, Ark., Sept. 6, 1918.
"Mr. John Gerard, Stockton, Calif.

"Friend John: Yours of the 25th of July at hand, and in reply to same will say I am depending on you and Moody in your old places this coming season. Please advise me by return mail if you will be on hand. I can not say just what time we will get started. But will let you know in time.

"I hope you are having a good time. Kindest regards to yourself and all the boys there.

"Very truly."

Gerard answered this letter and inquired when he should report, and in reply received the following letter:

"Fort Smith, Ark., Nov. 19, 1918.
Mr. John Gerard, G. D., Stockton, Cal.

"Dear Sir: Replying to yours of July 25th, would say we expect to start on December 9 if nothing happens to prevent same.

"Kindly advise us by return mail if we can depend on your being here at the start.

"Yours very truly,
"Model Window Glass Company."

Gerard answered this letter on the 22d, advising that he would be on hand when the plant resumed operations.

Thereafter appellants left California for Fort Smith on December 3, and sent appellee a telegram on that day announcing their departure. They arrived in Fort Smith on December 7, and reported for duty on December 9, and found that appellee's plant was not in operation. According to appellants, Zenor told them that he would take care of them as usual, and would pay them the $20 per week as provided in the national agreement, and this payment of $20 per week was made to each of them for two weeks, but at the end of the third week payment of the $20 was refused, whereupon appellants gave the two weeks' notice required by another article of the national agreement that they would quit appellee's services unless the payments were made.

Zenor testified that it was customary to advise men when to report, and that the letters sent out above were written pursuant to that custom, and that it was also customary for the men to write when they would report; but appellants gave him no notification of the time when they would report except in the telegram dated December 3. But on December 4th the company wrote the following letter:

"Dec. 4, 1918.

"Mr. John Gerard, Stockton, California.

"Dear Sir: Replying to yours of the 22d inst., would say we are sorry to say start has been delayed for some reason unknown to us. We will therefore have to advise you further; will send transportation if you are in need of same.

"Yours very truly,

"Model Window Glass Company."

Attached to this letter was a postscript dated December 20, containing the statement that the wage committee had disagreed, and that, "We are going to blow December 31 and are going to demand a scale." This letter would have informed its recipient that its blowers were not expected to report until December 31, and that the previously existing wage scale between employer and employee was no longer effective. Zenor testified that the

wage scale between appellee and the union, of which appellants were members, expired December 8, and that he did not know why it was not renewed on that day.

It is undisputed that the letter of December 4 was not sent appellants; and it is also undisputed that appellants left California on December 3, relying upon appellee's letter of November 19 that the plant would start on December 9; and it is undisputed that the plant had, during appellants' previous employment, been run as a union plant, and therefore operated under the national agreement; and it is undenied that appellants supposed the wage scale was in effect when they left California. But it is not contended that the expiration of the wage scale abrogated other provisions of the national agreement, and the binding effect of article 5, set out above, was not impaired because the wage scale had expired.

Zenor admitted that he told appellants, when they reported to him, that he would take care of them, and he admits that two payments of $20 each were made to appellants; but he says these payments were mere loans, and that the first advance was made in order that appellants might send the money to their homes as Christmas gifts.

Appellee was plaintiff below, and recovered judgment against each of the appellants for the $40 paid them; and the counterclaims of appellants, for the five weeks' pay, at $20 per week, less the $40 advanced, were dismissed; and this appeal is from that judgment.

We think the court below erred in its judgment. The facts stated constituted an implied contract, if not an express contract, to settle with appellants according to the terms of the national agreement. The correspondence set out above warranted appellants in believing, under the circumstances of the case, that they would be given employment, or be paid in accordance with the provisions of the national agreement, with reference to which the parties must be held to have contracted. Appellants paid their own transportation and expenses from California, and remained unemployed for five weeks; yet they

ask no recovery on that account. They ask judgment only for the money coming to them under the agreement, with reference to which they contracted; and we think an erroneous judgment was entered by the court below, and that judgment will, therefore, be reversed and the cause remanded for a new trial.