PETTY v. MISSOURI & ARKANSAS RAILWAY COMPANY.

4-6944

4-6944                                                           167 S. W. 2d 895

Opinion delivered February 1, 1943.

*Donald S. Martz, W. J. Dungan, W. R. Donham,* and *Sam M. Wassell,* for appellant.

*C. E. Yingling, V. D. Willis,* and *W. S. Walker,* for appellee.

McHANEY, J.   On July 16, 1941, appellant filed the following complaint, omitting formal parts, against appellee in the Woodruff circuit court: "That from June 25, 1925, to December 3, 1935, the plaintiff was in the employ of the defendant as locomotive engineer; that on December 3, 1935, while plaintiff was on a list of active locomotive engineers employed by defendant, he was pulled from service and discharged by defendant with-

out just or reasonable cause; that, at the time of his said discharge, plaintiff was working under an employment agreement made and entered into by and between defendant and its employees on August 8, 1935, and effective August 1, 1935; said agreement being entitled 'Missouri & Arkansas Railway Company Schedule of Rules, rates of pay and working conditions to engineers, firemen and hostlers'; that § § (d) and (e), respectively, of art. 32 of said agreement are as follows, to-wit:

'(d)   Enginemen shall not be discharged, suspended or demerits placed against their records until they have had a fair and impartial hearing before an officer of the company. At such hearing they may be represented by an employee of their own choice or by the regularly constituted committee of their organization. The representative of the man involved in the hearing shall have the right to introduce witnesses and interrogate any witness giving testimony at the investigation. If found not guilty, he shall be returned to the service and paid for time lost.

'(e)   Enginemen shall have the right to appeal from any decision which involves discipline.'

"That, since his summary discharge as aforesaid, plaintiff has never been given the hearing provided for in § (d) of art. 32 of said employment agreement; that he has repeatedly and consistently demanded such hearing, and that defendant has at all times, failed, refused and neglected to give him such hearing; that, upon a fair and impartial hearing, it will be developed that no cause existed at the time of plaintiff's discharge, or prior thereto, to justify such discharge; that plaintiff has, at all times during his employment with defendant, and at all times since his said discharge, been ready, able and willing to continue in said employment; that, at the time of said discharge, plaintiff was earning on an average of $225 per month as engineer for defendant, and that, by reason of such wrongful discharge without just cause and without having been accorded the hearing as provided in said agreement, defendant has breached said contract of employment, and that, in consequence of said

breach, plaintiff has suffered damages, as time lost, in the sum of fifteen thousand seventy-five dollars ($15,075); that suit was filed by the plaintiff herein against the defendant herein in the Boone county circuit court on the 3rd day of December, 1940, was the identical suit herein; that summons was issued on the filing of said complaint and immediately served on the defendant; that said suit remained continuously pending in said court until the ............................ day of July, 1941, when a voluntary non-suit was taken by the plaintiff; and that this suit is, therefore, filed within the period permitted by the laws of the state of Arkansas.

"Wherefore, plaintiff prays judgment against the defendant for reinstatement; for damages, as time lost resulting from defendant's breach of said contract of employment, in the sum of fifteen thousand seventy-five dollars ($15,075); for his costs herein expended, and all other proper relief."

Appellee demurred to this complaint on two grounds, (1) that it does not state facts sufficient to constitute a cause of action; and (2) that it shows on its face that, if a cause of action is stated, it is barred by limitations. The court sustained the demurrer. Appellant declined to plead further and his complaint was dismissed. This appeal is from that order.

A number of arguments are made by appellant for a reversal of this judgment and a similar number by appellee for its affirmance. Pro and con it is argued by the parties, (1) that this is a suit in tort for damages and that the three-year statute of limitations, § 9134, Pope's Dig., applies; (2) that since appellant alleged no written contract of employment with appellee, but only a written contract of employment for the whole class of engine employees, the contract is oral and the three-year statute, § 8928, applies; (3) that the contract between appellee and its employees set out in the complaint was in writing and that the five-year statute, § 8933, applies; and (4) that the contract or the particular provision thereof set out in the complaint as §§ (d) and (e) of art. 32 thereof, is unilateral, lacking in mutuality of obliga-

tion, and is unenforcible. These are interesting legal questions, but we pretermit a discussion of all of them except the last.

In beginning the discussion of this point (4), as above stated, learned counsel for appellant, in their brief, state: "In filing this appeal, appellant realizes that the holding in the case of *St. Louis, I. M. & S. R. Co.* v. *Matthews,* 64 Ark. 398, 42 S. W. 902, 39 L. R. A. 467, is against him. In order for appellant to obtain a reversal in the case at bar the majority opinion in the Matthews case, *supra,* should be overruled. While there are several essential differences between the facts in that case and the one at bar, (Matthews having had a hearing) the legal question of mutuality of obligation in a contract is the same."

In that case, Matthews was an engineer and was working under a contract with the company, art. 1 of which provided: "No engineer shall be discharged or suspended without just and sufficient cause, and, in case an engineer believes his discharge or suspension to have been unjust, he shall make a written statement of the facts in the premises, and submit it to his master mechanic, and at the same time designate any other engineer who may be in the employ of the company at the time on the same division; and the master mechanic, together with the engineer last referred to, shall, in conjunction with the superintendent, investigate the case in question without unnecessary delay, and give prompt decision, and, in case the aforesaid discharge or suspension is decided to have been unjust, he shall be reinstated and paid half time for all the time he has lost on such account." He was discharged and sought reinstatement under said article 1. This was denied him, without cause as he alleged. He sued for damages and recovered judgment for $500. In an opinion by Mr. Justice Battle, the judgment was reversed. The court said: "Appellee, for a stipulated consideration, agreed to serve appellant in the capacity of an engineer. There was no contract as to the time he should continue to serve. Appellant agreed to pay him according to certain rates for his services, not to discharge him without just cause, to promote him

according to certain grades of service, and, when it saw fit to reduce the number of its engineers, to discharge them in the order of their juniority in service, first discharging the youngest, and then the next, and so continuing until the number should be sufficiently reduced. There might have been in these promises an implied understanding on the part of the appellant to retain appellee in its service so long as he should serve it acceptably as an engineer, unless he should be sooner discharged in the manner indicated. But we fail to discover any evidence of an agreement on the part of appellee to serve any specified time. Hence there was no contract that he would serve, and that the appellant would employ him, for any stated time—the agreement of both being necessary to fix the time of service—and, consequently, no violation of a contract by the discharge of appellee before the expiration of any particular time.''

We see nothing in this holding that runs counter to any well established rule of the law of contracts. On the contrary it appears to us to be in harmony with the rule of mutuality of obligation. The fact that it was decided 45 years ago and by a divided court, Chief Justice BUNN dissenting, is not sufficient to justify overruling it. Decisions of other courts are cited to support the decision made, and our investigation discloses that there are a number of decisions of courts of last resort since that time and up until quite recently that are in accord with it. One of such cases is *L. & N. R. Co.* v. *Bryant*, 263 Ky. 578, 92 S. W. 2d 749, decided March 27, 1936. That case reviews a number, if not all, the former cases of the Court of Appeals of Kentucky holding to the same effect as our Matthews case, some of them being: *Hudson* v. *Cincinnati N. O. & T. P. R. Co.*, 152 Ky. 711, 154 S. W. 47, 45 L. R. A., N. S., 184, Ann. Cas. 1915B, 98; *N. & W. R. Co.* v. *Harris*, 260 Ky. 132, 84 S. W. 2d 69; *Clay* v. *L. & N. R. Co.*, 254 Ky. 271, 71 S. W. 2d 617; *Western Union Tel. Co.* v. *Ramsey*, 261 Ky. 657, 88 S. W. 2d 675, 103 A. L. R. 541. In that Bryant case the court said: ''It is difficult to perceive any logical reason why that principle should not be applied as between employer and employee in contracts for service of the nature and kind here involved the same

as in any other contract. If employees desire its elimination from their contracts of employment, it could easily be done by providing for definite periods of service conditioned upon ability and disposition to perform them, with optional rights in the employees to renew the contract in the absence of legal reasons against it, with corresponding obligation of the employer to abide by the option so given.''

There are decisions to the contrary, notably *McGlohn* v. *Gulf & S. I. R. Co.*, 179 Miss. 396, 174 So. 250, decided May 17, 1937, and *Rentschler* v. *Mo. Pac. R. Co.*, 126 Nebr. 493, 95 A. L. R. 1, 253 N. W. 694, decided March 23, 1934, where it was correctly remarked that ''the decisions of our courts are in hopeless conflict,'' and this was not a unanimous opinion. Commenting upon that decision in the Bryant case, the Kentucky court said: ''We are not unmindful that a contrary position seems to have been taken by the Nebraska Supreme Court in the case of *Rentschler* v. *Missouri Pacific Railroad Co.*, (citation as above) ; but that opinion was not a unanimous one and the reasons advanced therein for ignoring the well-settled principle of contract rights, *supra,* are not altogether satisfactory, although the opinion cites some from other jurisdictions in apparent support thereof, as does the annotation following that opinion in the last publication, commencing on page 10 of the 95 A. L. R. volume. The Nebraska Supreme Court in that case criticizes our opinions as well as those of other courts taking the same view. None of the courts adopting the principles of the (*Hudson* v. *C. N. O. & T. P. Ry. Co.*, 152 Ky. 711, 154 S. W. 47) and following cases from this court were, nor were we in any of those opinions, able to find any logical reason why such contracts should be made an exception to and governed by an entirely different rule from the universal one applicable to all other classes of contracts, and especially so when the open clause therein could be guarded against in some such manner as is above indicated.''

An extensive annotation to the Rentschler (Neb.) case may be found in 95 A. L. R. 10, and those desiring to pursue the matter further are referred thereto.

Our attention is called to the Railway Labor Act, enacted by Congress in 1926, as amended in 1934 and 1936. USCA, Title 45, chapter 8, as being persuasive of the trend of the times and that the rule of this and other courts, as announced in the Matthews case, should be overruled. We cannot agree. This act created the National Railway Adjustment Board, with four divisions, composed of an equal number of representatives of employers and employees, to adjust and "settle all disputes, whether arising out of the application of such agreements (agreements concerning rates of pay, rules and working conditions) or otherwise. . . ." Subd. 1. While this act does not prescribe an exclusive remedy and appellant was not obliged to present his claim to division No. 1 of said board, *Moore* v. *Ill. Central R. Co.,* 312 U. S. 631, 61 Sup. Ct. Rep. 754, 85 L. Ed. 1089, yet that procedure was open to him. Instead of presenting his claim to that tribunal, he elected to bring his action in this state, where the decision of this court in the Matthews case prevented his recovery. The contract under which he sues was made in 1935 and is conclusively presumed to have been made with reference to the laws of this state in force at the time it was made. As said in *Robards* v. *Brown,* 40 Ark. 423, "The laws which are in force at the time when, and the place where, a contract is made and to be performed enter into and form a part of it. This is only another way of saying that parties are conclusively presumed to contract with reference to existing law." *Adams* v. *Spillyards,* 187 Ark. 641, 61 S. W. 2d 686, 86 A. L. R. 1493. While the contracts involved in these cases were mortgages or deeds of trust, the obligations of which created by prior acts had been impaired by acts of the General Assembly the same rule applies to an act which impairs the obligation of a contract based on existing rights determined by this court. It was so held in *Adams* v. *Spillyards, supra.*

Nor does our adherence to the rule announced in the Matthews case tend, in any way, to militate against the asserted trend of modern decisions to adjudicate and determine substantial rights as between laborers and their union organizations on the one hand and employers on the other. In *Mastell* v. *Salo,* 140 Ark. 408, 215 S. W.

583, Mastell, a coal mine operator, had contracted with the United Mine Workers of America, of which Salo was a member, to employ only union miners and to settle controversies according to a contract known as Interstate Joint Agreement. The pit committee discovered that Salo was entitled to certain pay for work already done for which he brought suit. One of the questions was that Salo did not raise the question of the amount claimed and that the pit committee had no right to do so. This court held against the contention by saying "that the pit committee assumed to act for appellee as one of its members, and he adopted and ratified their action." No question of mutuality was raised, and could not well have been, even though the contract was the same in respect to discharge as the one here involved, since the suit was to recover money actually earned while working under the contract. See, also, *Moody* v. *Model Window Glass Co.*, 145 Ark. 197, 224 S. W. 436, and *Model Window Glass Co.* v. *Moody,* 150 Ark. 142, 233 S. W. 1092.

If appellant is a member of any labor organization, or if any such organization negotiated the agreement here involved with appellee, the complaint failed to allege it, and no mention is made therein of the Railway Labor Act, nor was it relied upon in the lower court.

It follows from what we have said that the judgment is correct and must be affirmed.

The Chief Justice thinks the contract of appellant was not in writing and is barred by the three-year statute of limitations. He therefore concurs in the result.

CARTER, J., (concurring). I concur in the result reached in this case, but not in the reasons adopted by the Court for that result.

I think the case of *St. Louis I. M. & S. Railroad Co.* v. *Matthews,* 64 Ark. 398, 42 S. W. 902, 39 L. R. A. 467, should be overruled. In that case, as here, there were certain rules or working conditions under which the railroad company agreed its employees should work. One of these rules was that the employees should not be arbitrarily discharged. Because of the fact that the employee

was not required to work indefinitely or for any specified length of time, but could quit work whenever he saw fit, this Court held in that case that the contract lacked "mutuality" and for that reason was not enforceable.

In my opinion, the reason there given by the Court for its decision was unsound. In cases of specific performance of contracts, courts of equity have worked out a doctrine of "mutuality." Where such a court can force one party to a contract to perform his obligations specifically but cannot, at the same time, make sure that he will obtain from the other party the consideration or price for such performance, then the courts in many cases refused to order any specific performance at all, and the reason given therefor was that the contract lacked mutuality. The doctrine as so worked out had nothing to do with consideration or with the formation of valid obligations. Courts of equity could and did refuse to order the specific performance of contracts which were perfectly valid and binding legal obligations. Later on, the law courts began to talk about lack of mutuality in connection with the question whether or not a contract had ever been validly formed. This led only to confusion and one result of this confusion was the decision of this Court in the Matthews case, *supra*.

No reason exists why an employee might not purchase from a railroad a promise, that he should not be discharged without a hearing, and pay therefor any number of good and valid considerations other than a return promise from the employee that he would work for the railroad forever or for a definite time. No reason exists why the sole and only consideration for a promise with reference to the term of employment must be another promise on exactly the same subject. So far as I know the contract of marriage is the only one in which a promise on the part of one of the parties can be purchased only by a promise on the part of the other party on exactly the same subject. I therefore think that the Matthews case was an unsound decision at the time it was rendered and should be overruled for that reason. A full discussion of "mutuality," with citations to many cases, texts and periodicals, is found in I Williston on Contracts, Rev. Ed., § 141.

In addition, the relations between employer and employee, especially in businesses of large size, has now become one of the important features of our industrial life. The regulation of these relations is one of the principal businesses of society at this time. It is of great importance to large numbers of people. We all know that this business is being handled in the manner in which it was attempted to be handled by the parties in this case, —that the means here used is the one commonly adopted to assure to the employees the thing in which they are more interested than anything else,—security against arbitrary discharge. Individual written contracts are not ordinarily worked out with each employee. There is an agreement between the employer and representatives of the employees as to rates of pay and working conditions, and the conditions so worked out become a part of each individual contract of employment. It is not the function of the courts to say that people shall not conduct their business in a certain way unless some good reason exists for such interference. Courts should rather attempt to fit and mold the rules of law to facilitate and carry out the methods by which a large part of the business affairs of the public are conducted. Such an attitude in Lord Mansfield's time resulted in the incorporation of the "Law Merchant" into the Common Law. In my opinion, erroneous reasoning about "mutuality" in connection with the formation of contracts does not constitute a valid reason why the courts should say that this method of handling an important part of the business of the public is not enforceable. It is, in effect, saying that while it is the general rule that the parties to a contract are the sole judges as to the adequacy of the consideration paid for a promise, yet this particular promise can be purchased from an employer only by a promise from the employee to work forever or for a definite time. Such is not the law.

In addition to this, persons interested in the preservation of local self-government have complained about the increasing amount of essentially local business and local controversies which have to be handled by federal boards, commissions and bureaus. There is no sound

reason why the courts may not adapt and mold the rules of law so that all controversies can be handled in the ancient tribunals of the people without having to call in administrative tribunals conducted from afar off by strangers to our local ways of life. When the courts make it necessary to resort to such boards, commissions and bureaus for relief, they are doing a disservice not only to the parties to the controversy but to the whole theory of local self-government. No reason at all exists for any such course in the case at bar.

Accordingly, I think the Matthews case should be overruled, and it should be held that the employee had a valid contract that he should not be discharged without a hearing.

I do not think it true that, because the Matthews decision stood unquestioned at the time the contract was made, the parties made it a part of their agreement. As said by Williston (III Contracts, § 615 at p. 1771): "Doubtless, law frequently is adopted by the parties as a portion of their agreement. Whether it is or not in any particular case should be determined by the same standard of interpretation as is applied to their expressions in other respects." And further, "it is a dangerous thing to read too many things into a contract that are not placed in the contract by the parties to it." There is no law that compels the inclusion in an agreement of every decision that may bear upon its validity or enforcement. The question is one of the intention of the parties. When the parties are trying to enter an agreement, by which they are presumed to intend they shall be bound, to the effect that the employee shall be secured against arbitrary discharge, while at the same time he retains that freedom from compulsory labor which is a part of our American heritage, it is unwarranted to find that they intend to incorporate into their agreement a decision to the effect that no such binding agreement can be made. If the Matthews decision is to govern here it ought to be on the theory that it correctly declares the law,—not on any such artificial and contrary-to-fact presumption as that the parties made it a part of their agreement. It is a fiction that everyone knows the law. To presume that

everyone makes his contracts with reference to existing decisions and adopts them as part of his agreement is to pile fiction upon fiction in an unnecessary, artificial and unwarranted manner.

I think, however, that the three year statute of limitations applies in this case and that the plaintiff's action is barred and that therefore the judgment should be affirmed.

The only thing that we have before us is the fact that the Missouri & Arkansas Railroad Company by agreement published a schedule of working conditions under which engineers would be employed. The contract of employment between the plaintiff and the company appears to have been purely verbal, but by reason of the publication of this schedule, its provisions became a part thereof. In my opinion, the contract of employment was from the beginning, and remained, a contract not in writing, and the three year statute of limitations applies thereto. This man was discharged on December 3, 1935, and no suit was filed until December 3, 1940. As his cause of action was based upon a contract not in writing and as more than three years have expired since his cause of action arose, his rights are barred by the statute of limitations, and, as this defense was specifically pleaded, it follows that the judgment below was correct.

ROBINS, J., (dissenting). I dissent from the opinion of the majority of the court in this case. A most logical argument against the soundness of the decision in the case of *St. Louis I. M. & S. Ry. Co.* v. *Matthews,* 64 Ark., 398, 42 S. W. 902, 39 L. R. A. 467, upon which the majority of the court is basing its opinion, is contained in the forceful dissenting opinion written by Chief Justice BUNN in that case. Judge Bunn, in his opinion, pointed out clearly that the facts in the two cases on which the majority of the court based its opinion were essentially different from those in the Matthews case and that his views were supported by the well-considered opinion of the Massachusetts Supreme Court in the case of *Carnig* v. *Carr,* 167 Mass. 544, 46 N. E. 117, 35 L. R. A. 512.

An analysis of the contract involved herein discloses that there were mutual undertakings on the part of each of the parties to the agreement. The railway company in its printed pamphlet proposed that all engineers who saw fit to enter its service should have the benefit of certain working conditions and the protection against groundless discharge provided for in the Company's rules, and there was no requirement on the part of the Company that, to obtain the benefit of these rules, the engineer should undertake to serve it for any particular length of time. By entering the service of the Company the engineer agreed that, during the term of his employment, he would be governed by these printed rules. These mutual undertakings provided a valid consideration for the contract. It is a matter of common knowledge that such agreements between employer and employees are very frequently made and have become a vital factor in the economic life of our country. The supreme court of Mississippi, sustaining the validity of a similar agreement, in the case of *McGlohn* v. *Gulf & S. I. R. R.*, 179 Miss. 396, 174 So. 250, said: ''We are of the opinion that the contract of the union was not void, for the reason that it is terminable at the will of either party. True it is that the employee was not bound to a state of servitude for life, and that the particular conductor here could have left the service if and when he pleased so to do. The contract, fairly interpreted, is that the railroad company agreed with these employees that the length of service of the particular employee, so far as the railroad was concerned, would be until a trial—completely under the control of the employer—should be had in accordance with article 30 and might be terminated in the manner therein provided . . .'' In considering a somewhat similar contract, the Circuit Court of Appeals of the Fifth Circuit, in the case of *Yazoo & M. V. R. Co.* v. *Webb*, 64 F. 2d 902, said: ''An agreement upon wages and working conditions between the managers of an industry and its employees, whether made in an atmosphere of peace or under the stress of strike or lockout, resembles in many ways a treaty. As a safeguard of social peace it ought to be construed not narrowly and technically but

broadly and so as to accomplish its evident aims and ought on both sides to be kept faithfully and without subterfuge. In no other way can confidence and industrial harmony be sustained." "Such agreements should be realistically construed, since they are drawn with the idea of providing a fairly permanent settlement of the major rights and duties of the parties." *Virginia Ry. Co. v. System Federation No. 40* (C. C. A., 4th Cir.), 131 F. 2d 840.

The court, in the Matthews case, did not promulgate any such rule of property as to require us to follow the decision in that case in obedience to the principle of *stare decisis*. Sound public policy requires that all disputes between capital and labor be settled, if possible, by agreements between the parties, rather than by strikes, lockouts, boycotts, and other costly and unsatisfactory methods, and, if the decision in the Matthews case invalidates contracts such as the one sued on herein, under which, in a great measure, the industrial peace of the nation is being preserved, we should overrule it now.

Nor can I agree that the contracts sued on herein is a verbal contract and that any action based on it was therefore barred in three years. The agreement sued on herein was contained in a printed pamphlet furnished by the Company to all of its employees, designated "Schedule of Rules, Rates of Pay and Working Conditions to Engineers, Firemen and Hostlers." It has been frequently held that, in order to constitute a valid written contract, it is not necessary that the writing should be signed by both parties, but that it is sufficient if the writing is signed by one of the parties to the contract and accepted by the other party. In the case of *Parker* v. *Carter*, 91 Ark. 162, 120 S. W. 836, 134 Am. St. Rep. 60, Mr. Justice FRAUENTHAL, speaking for the court, said: "A written contract, not required to be in writing, is valid if one of the parties signs it and the other acquiesces therein. The contract or agreement is thus evidenced by the writing, and where the party accepts and adopts the writing as the evidence of the contract he becomes bound by its terms . . . The above writing, although signed alone by plaintiff, was intended by the parties as

.an evidence of the agreement therein set out, and was accepted as such and acted on by the defendant. It was therefore an instrument in writing governed by the provisions of the statute of limitations respecting written contracts." The rule is thus stated in 17 C. J. S., p. 409: "A contract may be in writing as to one party and oral as to the other, as where a person makes his offer in writing and the other party accepts orally . . . such a contract is to be regarded as a written contract; and the same is true where an instrument which purports to set forth the mutual obligations of a contract is signed by but one party and is accepted and acted upon by the other." An agreement between employer and employees similar to the one here under consideration was held to be a written contract, and as such subject to the provisions of the statute of limitations relating to written contracts, by the supreme court of Mississippi in the case of *Moore* v. *Illinois Central R. Co.,* 180 Miss. 276, 176 So. 593, affirmed by the supreme court of the United States, *Moore* v. *Illinois Central R. Co.,* 312 U. S. 630, 61 S. Ct. 754, 85 L. Ed. 1089.

In my opinion the complaint in the case at bar stated a good cause of action and the judgment of the lower court should be reversed with directions to overrule the demurrer to the complaint.