**W. H. TINNON, Appellant,**

v.

**MISSOURI PACIFIC RAILROAD COM-
PANY, Appellee.**

No. 16195.

United States Court of Appeals
Eighth Circuit.

Oct. 11, 1960.

Thomas B. Tinnon, Mountain Home,
Ark., filed brief and made argument for
appellant.

Herschel H. Friday, Jr., Little Rock,
Ark., filed brief and made argument for
appellee.

Before SANBORN, MATTHES and BLACKMUN, Circuit Judges.

BLACKMUN, Circuit Judge.

This plaintiff was a locomotive engineer. He brought this diversity action against his railroad for damages for his discharge from employment in November 1955. The railroad's defense is that plaintiff's dismissal from service was based upon just and sufficient cause. The case was submitted to a jury. It was unable to reach a verdict and was discharged. The railroad, which had moved for a directed verdict at the close of the evidence, then moved, under Rule 50(b) F.R. Civil Proc., 28 U.S.C.A., for judgment in accordance with its motion for a directed verdict. This was granted and judgment was entered. The appeal is from that judgment.

The trial court's opinion, found at 167 F.Supp. 675, is detailed. It sets forth (a) the facts, few of which are disputed, (b) Article 44 of the collective bargaining agreement, effective September 1, 1930, and in effect during November 1955, between the railroad and the Brotherhood of Locomotive Engineers, and (c) those pertinent provisions of the 1950 revision of the Uniform Code of Operating Rules under which the defendant's two trains here involved were operating when the events leading to the plaintiff's discharge took place on November 7, 1955. Reference is therefore made to that opinion for the verbatim content of Article 44 and of those rules and for many of the factual details.

It may be stated in summary, however, that on the morning of November 7, 1955, plaintiff was the engineer on defendant's train No. 260, consisting of a diesel, 55 cars, and a caboose, which was proceeding northwestward from Cotter, Arkansas, toward Crane, Missouri; that defendant's passenger train No. 221, classified as "superior" to No. 260, was proceeding in the opposite direction through the same area; that the road was single track and without block signals or automatic control devices; that each of the two trains received notice of the presence of the other in the vicinity; that the passenger was ordered to wait at Bergman, Arkansas, until 9:05 a. m. for No. 260 and, if it had not then arrived, in Zinc, Arkansas, the next station 6.95 miles southward along the line, until 9:20 a. m.; that plaintiff in his diesel passed the Zinc station at 8:43 a. m., which gave him 17 minutes to reach Bergman and to effect the necessary clearance of the track, required under the rules, by 9:00 a. m., or 5 minutes *before* No. 221's release time at that point; that the passenger reached Bergman before nine and stopped north of the depot there and also north of the switch or fouling point into the Bergman siding; that between Zinc and Bergman plaintiff encountered two places where the track was moist from frost; that as a result his diesel's driving wheels slipped and he lost both speed and time; that although he was aware of this difficulty, he did not uncouple his diesel, leave his train and proceed ahead to Bergman with a brakeman to do the necessary flagging there but, instead, proceeded with his train to that station; that the approach at Bergman was clear and unobstructed for some distance; that plaintiff could see No. 221 standing still north of Bergman; that No. 260 was able to enter the siding through an empty team track at a point further south than the fouling point where the passenger stood; that by 9:00 a. m. the diesel and some cars of the freight were already on the siding and the train itself was proceeding into it; that the freight finally cleared the main track at 9:03½ a. m., 90 seconds before the passenger's release time; that the passenger's crew saw the freight and one of its brakemen aligned the switches so the freight could "go right on through"; that plaintiff did not place a brakeman-flagman on the ground at the team track switch he used to get off the main track; and that his brakeman, however, was in the door of the locomotive and prepared to flag.

The rules, which were introduced in evidence, and the pertinency of which is not questioned by the parties, are to the

following effect: Rule S–89 * (being applicable to a single track situation such as was here involved) requires an inferior train to clear the time of an opposing superior train not less than 5 minutes before the latter's leaving time. Rule 87, obviously recognizing that a situation may arise where compliance with this 5 minute rule is not possible, provides that where the inferior train fails to clear the superior one within the time, "it must be protected at that time as prescribed by Rule 99". Rule 99 is the Flagging Rule. It has to do with proper protection, through observation, fusees, torpedoes and flagging, in a situation where one train may be overtaken by another. Rule 99(b) provides that "When necessary, the front of the train must be protected as prescribed by Rule 99 by the forward trainman or by an engine man. The engineer will require such protection ahead immediately". Rule D requires employees to report any violation of the rules or any practice which imperils safety. Rule 107 places upon both the engineer and the conductor responsibility for the safety of the train, for observation of the rules, and for taking "every precaution for protection". Rule 108 states that "in case of doubt or uncertainty, the safe course must be taken". Rule 215 relates to the checking of orders and their knowledge and clearances by the train crews and, in particular, states that if there is any misunderstanding it "must be immediately corrected, even if necessary to annul such order and issue another".

It was admitted by the pleadings that Article 44 of the collective bargaining agreement provides that no engineer shall be discharged "without just or sufficient cause".

An assistant superintendent of the defendant happened to be a passenger on No. 221 on November 7, 1955, and he observed the apparent lack of compliance by No. 260 with the 5 minute rule. A formal investigation, as is required by the collective bargaining agreement, was held at Bergman on November 11. After that hearing the plaintiff was dismissed from service.

We note preliminarily that there apparently arises in this case no question of the plaintiff's exhaustion of the administrative remedies available to him under the contract between the railroad and his Brotherhood or under § 3 First (i) of the Railway Labor Act, now found as 45 U.S.C.A. § 153 First (i), and that, therefore, the issue, often encountered and dependent upon state law, as to whether plaintiff's pursuit of these remedies is a prerequisite to his damage action for discharge is not present here. Compare Moore v. Illinois Central R. Co., 312 U.S. 630, 636, 61 S.Ct. 754, 85 L.Ed. 410; Transcontinental & Western Air v. Koppal, 345 U.S. 653, 660–662, 73 S.Ct. 906, 97 L.Ed. 1325, and Mayfield v. Thompson, Mo.App., 262 S.W.2d 157.

The plaintiff's right to damages in a case such as this, however, is dependent, as this court has described it, upon "state contractual concept and remedy", Smithey v. St. Louis Southwestern R. Co., 8 Cir., 237 F.2d 637, 638, and a railroad employee can recover damages for discharge from his employment only "if the state courts recognize such a claim", Transcontinental & Western Air v. Koppal, supra, at page 661 of 345 U.S., 73 S.Ct. at page 910. This brings us then to the questions (a) as to which state law is applicable here, and (b) as to what that law is.

■ The conflict of laws rules of the state where the federal trial court sits are to be applied in diversity cases. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477; Griffin v. McCoach, 313 U.S. 498, 503, 61 S.Ct. 807, 85 L.Ed. 1116; Hablas v. Armour & Co., 8 Cir., 270 F.2d 71, 75. But the parties are in disagreement as to

---

* "Rule S–89. Clearing Time, Opposing Trains.—An inferior train must clear the time (in timetable or train order) of an opposing superior train not less than 5 minutes before the leaving time of the superior train." This rule is quoted here because of an error in its wording as set forth on p. 678 of 167 F.Supp.

whether, under the Arkansas conflict rules, as applied to the facts of this case, the substantive law of Missouri or the substantive law of Arkansas is to govern. The plaintiff argues that it is the law of Missouri which controls. He urges that he was a resident of Crane, Missouri, when he underwent his preliminary employment examinations and began working for the railroad in 1910; that his employment contract therefore was and is a Missouri contract; that at that time there was a collective bargaining agreement in effect between the defendant and a Brotherhood; that a substantial part of his work was performed in Missouri for a time; that his employment with the defendant has been continuous ever since 1910; that it was not interrupted by a short suspension in 1949; and that his move to Cotter, Arkansas, in 1915 or 1916 and his residence there ever since was a voluntary act on his part and has not affected the Missouri character of his employment contract. The defendant asserts, on the other hand, that it is the law of Arkansas which applies. In support of this position it stresses the plaintiff's residence in that state continuously since 1915 or 1916; the inception of his train runs there; the site of the incidents in question at Bergman in that state (suggesting that the substantive law of the place of performance must govern); the fact that the plaintiff was a resident of Arkansas when his employment became operative under the 1930 collective bargaining agreement upon which he relies; the termination of plaintiff's employment by dismissal in 1949; and what it claims to be a new employment of him by the railroad eight months later.

The trial court did not attempt to resolve this question but concluded that, irrespective of which law applies, the result, although for different reasons, was the same. While it might be desirable in most cases to resolve such an initial question of applicable law, we shall follow in this case the trial court's example and consider the law of both Arkansas and Missouri.

Arkansas law seems to be precise and definite. The Supreme Court of that state in a wrongful discharge case decided in 1897 held, one judge dissenting, that because the contract of employment contained no agreement by the employee to serve any specific length of time, there was no breach of contract in discharging him, even though a labor agreement regarded as part of the hiring contract provided, as here, that the employee shall not be discharged "without just and sufficient cause". St. Louis, I. M. & S. Ry. Co. v. Mathews, 64 Ark. 398, 42 S.W. 902, 903, 39 L.R.A. 467. In 1943, 46 years later, and again by a divided court, this holding was reaffirmed in another railroad discharge case, the court stating that this was "in harmony with the rule of mutuality of obligation". Petty v. Missouri & Arkansas Ry. Co., 205 Ark. 990, 167 S.W.2d 895, 897, certiorari denied 320 U.S. 738, 64 S.Ct. 37, 88 L.Ed. 437. This state of the Arkansas law was recognized and applied by this court in Smithey v. St. Louis Southwestern R. Co., supra, in 1956 and has also been noted and applied on at least two occasions, in addition to the trial court here, by other federal district judges in Arkansas. Roberts v. Thompson, D.C.E.D.Ark., 107 F.Supp. 775, 776; Smithey v. St. Louis Southwestern R. Co., D.C.E.D.Ark., 127 F.Supp. 210, 215. See also Crawford v. General Contract Corporation, D.C.W.D.Ark., 174 F.Supp. 283, 296–297; Jenkins v. Thompson, Mo. Sup., 251 S.W.2d 325, 326, and Donahoo v. Thompson, Mo.Sup., 291 S.W.2d 70, 72, 61 A.L.R.2d 911, certiorari denied 352 U.S. 941, 77 S.Ct. 261, 1 L.Ed.2d 237.

Although the Arkansas court has had occasion to examine in some detail its concept and use of language of mutuality, Johnson v. Johnson, 188 Ark. 992, 994, 68 S.W.2d 465, 466; Lindner v. Mid-Continent Petroleum Corp., 221 Ark. 241, 243, 252 S.W.2d 631, 632; and see Crawford v. General Contract Corporation, supra, p. 297 of 174 F.Supp., we detect nothing in those opinions which indicates any departure whatsoever from the hold-

ings in the Mathews and Petty cases. While the law in certain other states may be different, see Rentschler v. Missouri Pac. R. Co., 126 Neb. 493, 253 N.W. 694, 95 A.L.R. 1, and McGlohn v. Gulf & S. I. R. Co., 179 Miss. 396, 174 So. 250, 253, this court's task is to apply state law as we find it and not to formulate it. Yoder v. Nu-Enamel Corporation, 8 Cir., 117 F.2d 488, 489; United States v. Tilley, 8 Cir., 124 F.2d 850, 864, certiorari denied sub nom. Scott v. United States, 316 U.S. 691, 62 S.Ct. 1281, 86 L.Ed. 1762. We therefore necessarily conclude, until a contrary holding appears among the Arkansas decisions, that the Mathews and Petty cases still propound the law of that state and compel us to adhere to our holding in Smithey that under Arkansas law, even though the 1930 collective bargaining agreement here is deemed a part of this plaintiff's contract of employment and even though that agreement would impose conditions on discharge, nevertheless, because the plaintiff did not agree to work for any definite time, his contract of employment is terminable at will by the railroad and he has no cause of action.

■ The Missouri law is different but no less definite. The collective bargaining agreement may be enforced by the employee as a third party for whose benefit it was made. Baron v. Kurn, 349 Mo. 1202, 164 S.W.2d 310, 311, 142 A.L.R. 787. The absence, however, of an undertaking by the employee to work for a specified time does not, in contrast with the law of Arkansas, render the contract unenforceable because of lack of mutuality. Hall v. St. Louis-San Francisco Ry. Co., 224 Mo.App. 431, 28 S.W.2d 687, 689; Craig v. Thompson, Mo.Sup., 244 S.W.2d 37, 41. Consequently, the provision of the labor agreement here that no engineer shall be discharged "without just or sufficient cause" becomes a condition of dismissal.

■■ What constitutes just or sufficient cause for the discharge is said, where the facts are not disputed, to be a question of law and for the court; where the facts are in dispute, the matter becomes one for the jury under proper instructions. Craig v. Thompson, supra, at page 41 of 244 S.W.2d; Johnson v. Thompson, Mo.App., 236 S.W.2d 1, 11; Mullin v. St. Louis-San Francisco Ry. Co., Mo.App., 254 S.W.2d 438, 444. Where there are "clear or confessed violations of the rules" and the employer for that reason and in good faith and in conformity with the employment contract discharges the employees, there is no issue for the jury and the employee has no cause of action. Craig v. Thompson, supra, at page 41 of 244 S.W.2d; Parks v. Thompson, 363 Mo. 791, 253 S.W.2d 796, 802; Lee v. Missouri Pac. R. Co., Mo.Sup., 335 S.W.2d 92, 98. The result is no different where there is a violation of only a single rule. Johnson v. Thompson, supra, at page 10 of 236 S.W. 2d; Craig v. Thompson, Mo.App., 240 S.W.2d 163, 166. The Missouri cases contain many pertinent examples. Thus, where a brakeman did not leave information concerning his whereabouts at a terminal and missed a call to duty, in violation of Rules 703, 717 and 803, Craig v. Thompson, Mo.Sup., 244 S.W.2d 37, or where a fireman noted his train's proceeding through three red signals and called this to the attention of the engineer but did nothing more, in violation of Rule 979 and others, Parks v. Thompson, supra, or where an engineer refused to obey a conductor's instruction as to leaving a switch open and refused to comply with the instructions of a trainmaster as to the interpretation of a switching rule, in violation of Rules 104, 107 and 501, Lee v. Missouri Pac. R. Co., supra, the railroad defendant's action in discharging the employee was held proper in each case as a matter of law. But where there was evidence of such probative force that the jury could reasonably draw an inference that a conductor had neither time nor opportunity to use intoxicants, his wrongful discharge for alleged violations of rules relating to the use of intoxicants on duty created a question of fact for the jury. Johnson v. Thompson, Mo.Sup., 251 S.W.2d 645, 648. The same result

followed where the evidence was conflicting as to the plaintiff's compliance with signals. Wilson v. St. Louis-San Francisco Ry. Co., 362 Mo. 1168, 247 S.W.2d 644, 649.

The application of these principles to the facts before us leads inevitably to one conclusion. While the plaintiff in his testimony at the trial professed compliance with the rules and denied violation of any of them, and while this approach is strenuously argued on appeal, this insistence appears to equate only with non-violation in the light of the plaintiff's own interpretation of those rules. The trial record clearly shows that the 5 minute clearance prescribed by Rule S–89 was not effected at Bergman on the day in question. This rule violation, as has been noted, is not fatal if sufficient protection is otherwise afforded under Rules 87 and 99(b). Insofar as those rules are concerned, however, the plaintiff at the trial admitted that he did not have a flag ahead at 9:00 a. m. and that the brakeman was only in the door of the locomotive ready to flag at that time. He also admitted, although only guardedly, that he had not discussed the situation with the conductor or anyone when he knew that they would not make the required time at Bergman. Furthermore, the transcript of the investigation clearly shows, through the plaintiff's own testimony, at least lack of compliance with the 5 minute requirement under Rule S–89, failure to have the prescribed protection ahead at Bergman in violation of Rules 87 and 99(b), and failure to have a discussion of meeting the problem of lateness of time in violation of the implications of Rule 107. Most of this testimony is set forth in the trial court's opinion on pages 679–681 of 167 F.Supp. and need not be repeated here. We realize that the investigation transcript, upon plaintiff's objection, was not admitted for jury purposes but it was admitted, and properly so, for purposes of enabling the court to pass upon the railroad's contention that as a matter of law its dismissal of the plaintiff was for just and sufficient cause. We can only conclude from the testimony at the trial and from that at the investigation that the plaintiff violated operating rules and, as well, admitted such violations. We feel, therefore, that this case is one of clear and admitted rule violations within the standard enunciated by the Craig, Parks and Lee cases and is not one involving disputed "ultimate facts", as the plaintiff contends. It follows that under Missouri law there is no issue of wrongful discharge for the jury.

We do not overlook the plaintiff's contention that rule compliance should have some flexibility and that the flagging of a standing train, in full sight up a straight track with its crew aware of the freight's approach, was senseless and delaying. We are also mindful of the fact that no catastrophe ensued at Bergman on that November day in 1955. Strict compliance with the rules may seem useless and unnecessary under certain circumstances but to the extent that compliance may appear to be pointless it necessarily rests on the assumption that each member of the crew on the opposing train using a single track in a division without block signals will himself observe every rule. We are impressed, also, with the realization that safety to crew, to passengers, to equipment, and to freight are matters of prime concern, that the assumption of absence of human error is seldom warranted, and that the rules are the product of experience and of agreement between the railroad and its employees. We feel that the rules are neither to be ignored nor subjected to an employee's individual interpretation, that the ones here involved are not unreasonable, that their violation constituted a just and sufficient cause for discharge under Article 44, and that the defendant's action here was not arbitrary. As the Missouri Supreme Court in the Lee case, supra, said, at page 98 of 335 S.W.2d, "A railroad could not be operated without final authority in its officers to make rules, reasonably interpret them and require obedience to them as reasonably interpreted."

We are aware that this case presents its personal aspects and that it may seem unfortunate that this plaintiff now encounters this discharge after so long a period, literally a working lifetime, of employment with the railroad. (We, of course, are not in a position to pass upon his 8-month period of enforced inactivity in 1949, for the facts as to that are not before us). The record indicates, however, that the plaintiff was aware that his reinstatement was under consideration but that he insisted that if a like situation arose in the future he would act no differently, that he felt his action in November 1955 was a safe operation and not a violation of rules, and that he could not comply with the official interpretation of the Flagging Rule. His lack of reinstatement therefore was due, in part at least, to his own attitude.

Affirmed.