LEHNER, Appellant, vs. ASSOCIATED PRESS and another, Respondents.

*April 2—May 1, 1934.*

For the appellant there was a brief by *Lehner & Lehner* of Princeton, attorneys, and *Hill, Beckwith & Harrington* of Madison of counsel, and oral argument by *Philip Lehner*.

For the respondents there was a brief by *Sanborn, Blake & Aberg, Glen H. Bell, Charles A. Winding* and *Philip G. Sanborn,* all of Madison, and oral argument by *Mr. Bell.*

FOWLER, J.   The article complained of is substantially the same as that involved in *Lehner v. Berlin Publishing Co.* 211 Wis. 119, 246 N. W. 579, and was there held not to be a true report of a court proceeding, and therefore not privileged and libelous *per se.*   The publication of it in a newspaper would therefore render the publisher liable in an action based thereon, unless it were proved in defense that the defamatory matter was true.   No proof of its truth appears in the evidence herein.   The publication of the article in the Oshkosh Northwestern and other newspapers would render the defendants herein liable, if such publication was made at their direction or by their procurement.   However, if the article was published without authorization by the de-

fendants they are not liable for any such publication. *De Sénancour v. Société La Prévoyance,* 146 Mass. 616, 16 N. E. 553; *Montgomery v. Knox,* 23 Fla. 595, 3 So. 311.

The defendants claim that publication in the newspapers of the members of the corporation was not directed or authorized by them, because they never released the article for publication. We discover no evidence of such release. There was an express direction on March 10th to withhold publication. There was no authorization of publication thereafter. The original instructions were, in effect, that the article might be published if the Kelm case were affirmed or reversed, using the word "was" in event of affirmance and the words "was not" in event of reversal. Dismissal of an appeal is neither an affirmance or reversal. Therefore there was never any authorization by the defendants of publication of the article.

It is urged that whether the publication of the article under the facts existing was authorized by the defendants was for the jury to determine. But the facts respecting the matter are without dispute and permit of only one factual inference. In this situation the inference to be drawn from them is one of law.

It is contended by the appellant that the sending of the article by the defendants to the members of the defendant corporation was itself an actionable publication, just as the sending of a defamatory letter to persons other than the one to whom it refers is such a publication as renders the sender liable in an action for libel. The defendants submit as meeting this contention that the sending of the article is conditionally privileged and not actionable except on proof of malice, and that the evidence herein contains nothing to warrant an inference of malice. We are unable to discover anything in the evidence that would justify an inference of malice on the part of the defendant Almen. Almen alone acted for the defendant corporation in preparing and transmitting

the article upon which the suit is based, and as there is no evidence of malice as to him there is none as to the defendant corporation.

We are of opinion also that the contention of the defendants that the article is conditionally privileged is sustained both upon authority and principle. Authorities bearing upon the point are collected and discussed in notes in 5 A. L. R. 455, and 18 A. L. R. 776. The rule is stated in 26 L. R. A. (N. S.) 1081, as follows:

"It is the general rule that where two persons have a common interest, every communication made by one to the other in an honest attempt to protect such common interest is privileged, in the absence of malice. This rule would seem to have especial force when applied to members of a corporation or of an association, where the parties may have a legal, as well as a personal responsibility, the one to the other; and such communications if *bona fide* and without malice may reflect upon other members, or upon the officers or employees of the corporation or association, or even upon third persons with whom it may have dealings. The cases are very harmonious in observing and following the rule, so far as corporations are concerned."

The question has many times arisen in cases involving insurance and railroad corporations, wherein communications have been sent between corporations and between offices or agents of corporations, defamatory in their nature, aiming at investigation of the conduct or the discharge of persons in the company's service. In 36 C. J. p. 1225, it is stated that—

"A corporation is an entity so that its acts through its members as a corporate body, or through its officers or agents, are regarded as the acts of the legal entity or artificial person as distinguished from the members who compose it, or the officers or agents through whom it acts. Hence, it is held that communications between officers of a corporation or between different branches of the same corporation, in the course of corporate business, are not publications to third persons by the corporation."

Such communications have uniformly been held to be conditionally privileged. If so privileged as to the company they are also so privileged as to the person writing them.

The basis of the rule is the mutuality of interest, the common interest, of the corporations or offices or persons between whom the communications pass. In *Gattis v. Kilgo,* 140 N. C. 106, 52 S. E. 249, it is stated respecting slander:

"Any statement or communication is conditionally privileged when made *bona fide* about something in which (1) the speaker has an interest or duty; (2) the hearer has a corresponding interest or duty; and (3) when the statement or communication is made in protection of that interest or in performance of that duty."

This of course applies to writings claimed to be libelous as well as to statements claimed to be slanderous. In the instant case, the defendant Almen, and the defendant the Associated Press, had a duty to perform to the members of the defendant corporation. The defendant corporation and its members had a common interest in the dissemination of news; the common duty of dissemination of news to perform. In *Montgomery v. Knox, supra,* the rule is stated in effect that a publication in regard to business, made by one having an interest therein only to others having an interest therein, is privileged and affords no basis for an action of libel, although defamatory, unless actuated by express malice. Here the article was sent in performance of the defendant corporation's business, and only to those having an interest in that business. The following cases are in point upon the rule stated, and many others might be cited: *Prins v. Holland-North American Mtg. Co.* 107 Wash. 206, 181 Pac. 680; *Nichols v. Eaton,* 110 Iowa, 509, 81 N. W. 792; *Palatine Ins. Co. v. Griffin* (Tex. Civ. App.), 202 S. W. 1014; *Bohlinger v. Germania Life Ins. Co.* 100 Ark. 477, 140 S. W. 257; *Jump v. Barnes,* 139 Md. 101, 114 Atl. 734.

This court has held that words spoken to one having an interest in a defamatory communication are conditionally

privileged. *Noonan v. Orton,* 32 Wis. 106; *Rude v. Nass,* 79 Wis. 321, 48 N. W. 555; *Cook v. Gust,* 155 Wis. 594, 145 N. W. 225. In *Johnson v. Rudolph Wurlitzer Co.* 197 Wis. 432, 222 N. W. 451, statements by a local manager of the defendant corporation defamatory of an employee of the corporation were held "within the field of conditional or qualified privilege" and not actionable in absence of express malice. And in *Flynn v. Western Union Tel. Co.* 199 Wis. 124, 225 N. W. 742, the defendant company was held not liable for sending a message containing defamatory matter "where the communication is [was] made to a servant or business associate in the ordinary and natural course of business."

The appellant cites *Wahlheimer v. Hardenbergh,* 217 N. Y. 264, 111 N. E. 826, as contrary to the rule above stated. In that case the manager of a news-gathering association, comprised of the publishers of New York city newspapers, was sued for libel because of the sending of an article written by a reporter of the association to several newspapers published by the members of the association. It appeared that the defendant had no part in or knowledge of the sending of the article. He was manifestly not liable for that reason. We do not perceive that this case goes to the point here involved. There is a statement on page 266 of the opinion that there was no denial that distribution of the article to the members of the association was itself a publication, but this was far from the point that such distribution was such a publication as imposed liability upon the association itself or upon the writer in absence of malice. Apparently the point was not litigated. The question of conditional privilege is not mentioned in the opinion. The article there involved was published in their newspapers by members of the association, and actions had been brought and judgments recovered against such publishers for their publications. The writer of the article, having written it for newspaper publication, was doubtless also liable. But we do

not regard the case as reaching the point here involved, or as authority against the proposition that mere distribution of the article among the members of the association was conditionally privileged.

*By the Court.*—The judgment of the circuit court is affirmed.

FRITZ, J. (*dissenting*). I do not concur in the court's conclusions that the original instructions sent out by the defendants with the libelous article prior to March 10, 1931, were, "in effect, that the article might be published if the Kelm case were affirmed or reversed;" that there was no evidence that the defendants ever released that article for publication; and that therefore it was not within the province of the jury to find that the publication of that article in the Daily Northwestern of Oshkosh was authorized by acts of the defendants.

The only instruction sent with that article prior to March 10, 1931, read as follows:

"Editors: Following are briefs on supreme court cases, most of which probably will be decided Tuesday, March 10. Those that are not should be held."

In that instruction there are no words which unequivocally rendered the authority of the Associated Press members to publish that article conditional upon the Kelm case being either affirmed or reversed. The only references in that instruction in relation to the disposition of cases covered by the articles are that the cases probably will be "decided" on March 10th; and that "those that are not should be held." It seems to me that those words reasonably admit of the inference that publication of the article was authorized in the event of any decision in the case by the court. The manner in which the word "decided" was used in that instruction certainly does not necessarily indicate that it was intended not to include as a "decided" case, one in which the court filed a decision which disposed of an appeal by dis-

missal. In my opinion when this court, on April 7, 1931, filed its decision dismissing the appeal in the Kelm case, that case could reasonably be considered a "decided" case, within the meaning of the word "decided" as it was used in that instruction. That is particularly true in view of evidence in the record as to the customary practice in relation to such publications, and the facts and circumstances because of which those in charge of the publication of the Daily Northwestern believed the article had been released by the defendants for publication.

The following facts are undisputed: On April 7, 1931, when this court filed its decisions, the defendants, following their usual practice, sent to each Associated Press member a telegram in which they listed the decided cases, including the Kelm case, with brief statements indicating which of them were affirmed, which were reversed, and that in the Kelm case the appeal was dismissed. In another telegram which defendants sent on that date to each member, they listed twenty-one of the decided cases, as to which they had theretofore also sent out articles with certain words in the alternative in brackets, one or the other of which was ultimately to be used, as to each case, to state the result of the decision therein. In that second telegram the defendants stated which of those alternative words was to be used in each case, but, in that telegram, the Kelm case was not listed and there was no statement by the defendants in relation thereto. Upon the receipt by the publisher of the Daily Northwestern of the telegram in which the decision in the Kelm case was listed, it published the libelous article in substantially the form in which the defendants had sent it, excepting that the alternative words "was not" were omitted in that portion thereof which was intended to state whether Judge Davison's order was or was not "justified."

On the subject of whether the publication under those circumstances can be deemed to have been authorized by the defendants, and the customary practice in respect to such

publications, the telegraph editor of the Daily Northwestern testified to the following effect: Articles based on supreme court cases are printed when the decisions are handed down by that court and are reported over the Associated Press as being out. That is the information on decisions, and was regarded at the time as a release for the printing of these stories. He never received a telegram from the Associated Press telling him to release or not to release a story of that kind. The information upon which such a story is published is the list of decisions sent out by the Associated Press, in which the decisions are classified as either "affirmed," or "reversed," or "appeal dismissed." The Associated Press also sends out additional information as to the alternative word to strike out of the story sent, to assist in editing it. That is only used as information as to what word is to be struck out of the story sent by the Associated Press, so as to check the story with the supreme court decision. That information is not depended on for releasing the story. The stories are published when either the list of decisions or the list of alternative readings is received. If the alternative readings come first, the story is gotten out in order to prepare the copy, but usually the list of decisions comes first, and then the story is published. Another witness, who was the president and general manager of the corporation which published the Daily Northwestern, and who had been in the newspaper business for forty years, testified that the article was handled in the Daily Northwestern as all other supreme court stories were handled. They took the telegram, which announced the decisions of the supreme court, for the release, as was their practice at that time. In stories like that, the only release was the information as to the decisions of the supreme court being handed down. When the court came in, the stories of that nature were automatically released.

Although there were contradictions in the testimony of the witnesses, it was for the jury to determine the truth and

facts in those respects. In the final analysis, in view of that testimony as to the customary practice, coupled with the instruction sent by the defendants with the article prior to March 10, 1931, and their telegram on April 7, 1931, which listed the Kelm case with the notation "appeal dismissed," it was within the province of a jury to find that, as the result of the defendants' acts, the article had been released for use by the Association's members, and that the publication thereof in the Daily Northwestern was an authorized, and natural and probable consequence of those acts.