## KVOS, Inc., v. ASSOCIATED PRESS.
### No. 420.

District Court, W. D. Washington, N. D.
Feb. 18, 1936.

See, also, (D.C.) 9 F.Supp. 279.

Joseph T. Pemberton, of Bellingham, Wash., for plaintiff.

Tanner & Garvin, of Seattle, Wash., for defendant.

NETERER, District Judge.

Plaintiff, a local corporation, "Rogan Jones, President," and licensed by F C C, is engaged in the Radio Broadcasting business, seeks damages from defendant, "a cooperative organization incorporated under Membership Corporation of the State of New York, its members being either proprietors or representatives of about 1200 newspapers published in all parts of the United States * * * it gathers in all parts of the world by means of various instrumentalities of its own and by exchange of its members and by other appropriate means news and intelligence of current and recent events of interest to newspaper readers and distributes it daily *to its members for publication in their*

*newspapers."* (Italics supplied.) Associated Press, a Corporation, v. KVOS, Inc., a Corporation (C.C.A.9 of December 16, 1935.) 80 F.(2d) 575.

Plaintiff alleges that it has "expended many thousands of dollars in equipment and advertising, and building the station to its present size capacity; that its business peculiarly depends upon the respect and good will of the public and its patrons; that it has transactions with many persons in obtaining news and business locally, and in the state and nation; that it renders to the public news service gratuitously and secures its compensation from advertisers, and the profit of its business is dependent upon its good reputation, credit, and the trust reposed in it by the public; that an action pending in the Circuit Court of Appeals of the Ninth Circuit in which this plaintiff is defendant, and the defendant herein is plaintiff, has made this plaintiff nationally known; that by reason of the publication, damage resulted to its business, its good will, its reputation" to a named sum.

The defendant moves to strike from paragraph 3: "That the plaintiff was one of the first radio stations to render to the public the service of the announcement of news over the radio and its fight for the public interest in enabling the public to receive the important news events without cost to the public over the radio and which fact has been publicized over the radio and in the newspapers and magazines over the United States, and" And from paragraph 4: "That there is now pending in the Circuit Court of Appeals, Ninth Circuit, Case No. 1087, entitled the Associated Press, a corporation, v. KVOS, Inc., by reason of this litigation and plaintiff's own efforts, the plaintiff has become nationally known," and to make paragraph 5 more definite so as to state whether all statements published as charged are false, if not, which are false and in what respect; also to state how the plaintiff was injured if more than in one respect, to state the amount of damage in each respect.

The motions must be denied.

Paragraph 3 states the material status in the business world as a basis of confidence and trust. Paragraph 4 adds to the scope or zone over which the plaintiff is known, Peck v. Tribune Co., 214 U.S. 185, 29 S.Ct. 554, 53 L.Ed. 960, 16 Ann. Cas. 1075, and emphasizes the zone and extent of possible influence, and scope of community as basis for hurt, and may bear on motive for publication. Nat'l Cash Reg. Co. v. Salling (C.C.A.) 173 F. 22, and possible injurious effect of the publication upon the plaintiff's advertising patrons. Townsend, Slander and Libel, § 263. As to paragraph 5, supra, it is noted that no special damages are pleaded, and it is stated that the published statement is false.

The defendant demurs to the sufficiency of the complaint: (1) No legal capacity to sue; (2) defect of parties defendant; (3) not sufficient facts stated.

Capacity to sue is so obvious that the first may be passed without comment, the second with the statement that the actual publishers might have been joined as tort-feasors since the matter was delivered to the newspapers for publication and published; but the newspapers are not necessary parties. As to the third, the laws of Washington, Rem.Rev.Stat. § 2424, as amended by Laws Wash.1935, p. 329, § 1, provides: "Every malicious publication by writing, printing, * * * radio broadcasting * * * which shall tend * * * to injure any * * * corporation or association of persons in his or their business or occupation, shall be libel," and also provides that such publisher shall be guilty of gross misdemeanor. This statute has heretofore been applied by the courts in civil liability litigation when the word "malice" was omitted. Puget Sound Navigation v. Murray (D.C.) 233 F. 832; Wilson v. Sun Publishing Company, 85 Wash. 503, 148 P. 774, Ann.Cas.1917B, 442; Cyclohomo Amusement Co. v. Hayward-Larkin Co., 93 Wash. 367, 160 P. 1051. Words reasonably capable of defamatory and hurtful construction must be left to the jury for interpretation and meaning as to whether they constitute libel. Culmer v. Canby (C.C.A.) 101 F. 195, 196, 197; Sanderson v. Caldwell, 45 N.Y. 398, 6 Am.Rep. 105.

The charge in the complaint is that the publication was false and malicious. "Malice" is said to be an act wantonly done against another which a person of reasonable intelligence must know to be contrary to his duty and purposely prejudicial to another; even though not inspired by hatred or revenge, the law will imply malice, Tinker v. Colwell, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754, "the wilful doing of an injurious act without lawful excuse," Com. v. York, 9 Metc. (Mass.)

93, 104, 43 Am.Dec. 373; it means ill will with hatred, Ford v. State, 7 Ind.App. 567, 35 N.E. 34, 35. Legal malice is presumed upon doing unlawfully an injurious act voluntarily and includes willfully. U. S. v. Three Railroad Cars, 28 Fed.Cas. page 144, 145, No. 16,513. It merely signifies the "doing of an unlawful act without excuse." Commonwealth v. Goodwin, 122 Mass. 19, 35. Good faith does not justify publication of defamatory matter. Sheckell v. Jackson, 10 Cush. (Mass.) 25; Detroit Daily Post Co. v. McArthur, 16 Mich. 447.

The complaint is clearly within Peck v. Tribune Co., 214 U.S. 185, 29 S.Ct. 554, 556, 53 L.Ed. 960, 16 Ann.Cas. 1075, supra. Justice Holmes, with whom all Justices agreed in 214 U.S. 185, at pages 189, 190, 29 S.Ct. 554, 53 L.Ed. 960, 16 Ann. Cas. 1075, "it may be that the action for libel is of little use, but, while it is maintained, it should be governed by the general principles of tort. If the advertisement [statement] obviously would hurt the plaintiff in the estimation of an important and respectable part of the community, liability is not a question of a majority vote," and the zone of knowledge of its business as given by the pending case, supra, conceivably may have a part here.

The article does not bear the stamp of inter-official communication as contended by the defendant. The defendant is a distinct entity under the corporate laws of New York, and each of the 1,200 newspapers or more (Associated Press v. KVOS, INC., supra) is a member and is within itself a distinct entity (as publisher separate and distinct from the defendant as a news-gathering agency), and the item bears no sense of inter-official communication, but as alleged in the complaint, it was *delivered* for the *purpose* of *immediate publication.*

■■ The members of the defendant, each a distinct entity, obviously form a confederation for the purpose of discovering and disseminating news and compose the defendant a distinct entity, which is the factor that gathers the news items and disseminates them among the separate distinct entities for immediate publication, or for future publication upon release. If an item of news is furnished for publication, upon release or the happening of an event and publication prior to such release, or the happening of the event, it would be an unauthorized publication and the defendant would not be liable. Lehner v. Associated Press, 215 Wis. 254, 254 N.W. 664. In that case the article was published "without malice." These suggestions are a matter of defense and are not obvious on the face of the complaint. Privilege is a matter of defense and may not be raised on demurrer. Robinson v. Coulter et al., 215 Mass. 566, 102 N.E. 938; Riley et al. v. Evening Post Pub. Co., 30 Cal.App. 294, 158 P. 225. See, also, Mark M. Israel v. Portland News Pub. Co. (Or.) 53 P. (2d) 529, just decided.

■ The First Amendment grants freedom of the press but does not exempt libel as a privilege. U. S. ex rel. Milwaukee Social Democratic Pub. Co. v. Burleson, 255 U.S. 407, 41 S.Ct. 352, 65 L.Ed. 704.

The Press sheds much light upon public and private affairs and elucidates business problems, and personal social relations, and inspires good will and kindly helpful thought in unfolding the lives of a community in harmonious relation and fashion to the spiritual and material welfare for the common good, and gives a note of warning of corrupt or immoral or unworthy influences harmful to the common good, and hurtful to the social well-being, or conversely the Press can cast a dark and long shadow upon the corporate conduct and personal activity and individual and social welfare and create resentment, hate, loss of respect and confidence of the community, and destroy individual and associated well-being, and may cause a party's methods to be scorned, and its business despised, and rejected by the community.

For bona fide truthful use, the Press has freedom. For willful hurtful untruth the Press has not privilege, but is subject to civil liability. Dupont Engineering Co. v. Nashville Banner Pub. Co. (D.C.) 13 F. (2d) 186.

The published statement, it is charged, is false and malicious.

The demurrer is overruled.