Henry P. HALSELL, Appellant,

v.

KIMBERLY–CLARK CORPORATION, Appellee.

No. 81–1873.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1982.

Decided July 26, 1982.

Rehearing and Rehearing En Banc Denied Sept. 14, 1982.

Bill R. Holloway, Lake Village, Ark., for appellant, Henry P. Halsell; Holloway & Bridewell, Lake Village, Ark., of counsel.

James M. McHaney, Owens, McHaney & Calhoun, Little Rock, Ark., for appellee, Kimberly-Clark Corp.

Before BRIGHT, Circuit Judge, HENLEY,[*] Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

BRIGHT, Circuit Judge.

Henry Halsell appeals from an adverse judgment in his suit seeking damages for his allegedly wrongful discharge from employment by Kimberly-Clark Corporation (Kimberly-Clark). Because we agree with the district court's[1] disposition of the case, we affirm the judgment of the district court.

I. *Background.*

In June 1974, Henry Halsell left his job with Spencer Foods to accept employment as a project manager for Kimtech, a wholly owned subsidiary of Kimberly-Clark. Kimtech had contracted to provide design, engineering, and construction services for the expansion of a pulp and paper mill in Orizaba, Mexico, owned by Kimberly-Clark de Mexico (a Mexican corporation in which Kimberly-Clark held a minority interest). In recruiting a supervisor for its operations in Orizaba, Kimtech placed an advertisement for a project manager[2] in a trade journal of the paper industry.

After responding to the advertisement, Halsell was interviewed by John Tinnell,

---

[*] Judge Henley assumed senior status on June 1, 1982.

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas. Partial summary judgment was entered before trial by the Honorable Richard S. Arnold, then United States District Judge for the Eastern District of Arkansas. *See infra* p. 288 n.3.

2.           PROJECT MANAGER

A most unique opportunity has just developed for a highly qualified individual.

The company, a subsidiary of one of the leading growth corporations in our industry, consists of one of the most highly qualified groups of managerial and technical people ever assembled in their field. This subsidiary was recently formed at the direction of the Chief Executive Officer of the parent corporation and has his full support. Its policies and objectives were fostered by this outstanding executive and represent some of the industry's most innovative thinking.

The person selected will have an engineering degree, be highly familiar with pulp mill design, have a knowledge of the kraft pulping

president of Kimtech, and the officials of Kimberly-Clark de Mexico with whom Halsell would work most closely. On June 28, 1974, Tinnell telephoned Halsell to offer him the job as project manager. Halsell requested a written employment contract for a definite period of time. Tinnell responded that he could not offer Halsell such a contract, and that the issue was not negotiable. Halsell accepted Tinnell's offer by telephone the same day. Halsell went to Orizaba, Mexico, as project manager in August 1974, and remained there until his discharge on November 15, 1975.

In October 1977, Halsell instituted this action against Kimberly-Clark, alleging that his discharge constituted a breach of his employment contract. He later amended his complaint to include claims for violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1976) (ADEA), and for defamation by one of Kimberly-Clark's employees.

Prior to trial, the district court[3] granted defendant Kimberly-Clark's motion for partial summary judgment on the defamation claim. The parties tried the remainder of the case before a jury. At the close of Halsell's case, however, the court directed a verdict for Kimberly-Clark on the ADEA claim. Thus, the court ultimately submitted only the breach of contract claim to the jury.

In response to special interrogatories, the jury concluded that Kimberly-Clark had breached its employment contract with Halsell, and awarded Halsell $250,000 in damages. The district court, however, subsequently granted Kimberly-Clark judgment notwithstanding the verdict.

Halsell now appeals the judgment of the district court, contending that (1) the district court should not have granted summa-

ry judgment on the defamation claim; (2) the district court improperly directed a verdict against him on the ADEA claim because he had established a prima facie case of age discrimination; (3) the court should not have entertained a motion for judgment n.o.v. on the contract claim because Kimberly-Clark failed to renew its motion for a directed verdict on that issue at the close of all the evidence; and (4) the court erred in awarding Kimberly-Clark judgment n.o.v. because the jury's verdict was reasonable and supported by substantial evidence. We consider these arguments in turn.

II. *Summary Judgment on Defamation Claim.*

Halsell amended his original complaint to include a claim of defamation against Kimberly-Clark and Wayne Cheng, a Kimtech design engineer. The amended complaint alleged that Cheng published a false and defamatory memorandum about Halsell. Cheng had written the memorandum to Al Wendahl, manager of Kimberly-Clark's pulp and paper mill activities, regarding problems with Halsell on the Orizaba project. The memorandum remained in Wendahl's personal files until produced in this litigation.

The district court dismissed the claim against Mr. Cheng individually, for lack of personal jurisdiction. Subsequently, the district court granted Kimberly-Clark partial summary judgment on the defamation issue because no publication of the allegedly defamatory statements had occurred.

> In terms of Kimberly-Clark's liability, the alleged publication was from Kimberly-Clark to Kimberly-Clark when the memorandum travelled from one Kimberly-Clark employee to another. All this amounts to is the corporation, through its agents, talking to itself. Until the de-

---

process and a successful record of project management. He will be a permanent member of the staff and report to a Senior Vice President.

The initial assignment will be the management of a $40,000,000 project in a nearby foreign country. He will work with a local consulting firm, supervise design and con-

struction engineers and be responsible to the mill owners.

An excellent compensation package, including a fringe benefit program without peer in our industry is provided.

**3.** The Honorable Richard S. Arnold, then United States District Judge for the Eastern District of Arkansas.

famatory statement is communicated outside the corporate sphere or internal organization, it has not been published. [*Halsell v. Kimberly-Clark Corp.*, 518 F.Supp. 694, No. L.R. 76–C–208 (June 24, 1981) (order) (citations omitted).]

■ An action for defamation requires publication of the allegedly defamatory matter to one other than the defamed person. The Wisconsin Supreme Court[4] has held that communications between officers of a corporation or between different branches of the same corporation, in the course of corporate business, do not constitute publications to third persons. *See Lehner v. Associated Press*, 215 Wis. 254, 254 N.W. 664, 666 (1934); *Flynn v. Reinke*, 199 Wis. 124, 225 N.W. 742, 744 (1929). Because the essential element of publication was lacking in this case, the district court correctly granted partial summary judgment to Kimberly-Clark on the issue of defamation.

III. *Age Discrimination.*

At the close of the plaintiff's case-in-chief, the district court granted defendant Kimberly-Clark's motion for a directed verdict on Halsell's claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1976) (ADEA). Halsell contends that the district court should not have directed a verdict because he had established a prima facie case of age discrimination. He seeks a new trial on this issue.

■ The Supreme Court recently clarified the parties' respective evidentiary burdens in an employment discrimination case. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory rea-

son for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. [*Id.* at 252–53, 101 S.Ct. at 1093 (citations omitted).]

Although the Court in *Burdine* addressed a claim of gender discrimination in violation of Title VII, the same standards apply in an ADEA case. *See Douglas v. Anderson*, 656 F.2d 528 (9th Cir. 1981); *Sutton v. Atlantic Richfield Co.*, 646 F.2d 407 (9th Cir. 1981).

■ To establish a prima facie case of age discrimination, Halsell would have to show that Kimberly-Clark discharged him "under circumstances which gave rise to an inference of unlawful discrimination." *Texas Department of Community Affairs v. Burdine, supra*, 450 U.S. at 253, 101 S.Ct. at 1093; *Douglas v. Anderson, supra*, 656 F.2d at 531.

■ Although the proof necessary to establish a prima facie case will vary according to the circumstances of the case, *see Moses v. Falstaff Brewing Corp.*, 550 F.2d 1113, 1114 (8th Cir. 1977), the four criteria set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), provide one way of establishing a prima facie case of employment discrimination. *See Douglas v. Anderson, supra*, 656 F.2d at 531; *Smith v. University of North Carolina*, 632 F.2d 316 (4th Cir. 1980); *Smithers v. Bailar*, 629 F.2d 892 (3d Cir. 1980); *Houser v. Sears, Roebuck & Co.*, 627 F.2d 756 (5th Cir. 1980); *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir. 1979).

In *McDonnell Douglas*, the Supreme Court held that a claimant under Title VII could establish a prima facie case of prohibited discrimination by showing that he belonged within the class protected by Title VII, that he applied and was qualified for an available position, that he was not hired

4. Because the alleged defamation occurred at Kimberly-Clark headquarters in Neenah, Wisconsin, we apply the substantive law of Wisconsin on the defamation issue in this diversity case.

despite his qualifications, and that the position remained open after his rejection and the employer continued to seek applicants of comparable qualifications. *McDonnell Douglas Corp. v. Green, supra*, 411 U.S. at 802, 93 S.Ct. at 1824.

In *Loeb v. Textron, supra*, the First Circuit used the elements of *McDonnell Douglas* to evaluate a claim of unlawful discharge under the ADEA. Because the complaint stemmed from firing rather than hiring, however, the court modified the four factors in order to produce an analogous inference.

> Complainant would be required to show that he was "qualified" in the sense that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative. He would also have to show that his employer sought a replacement with qualifications similar to his own, thus demonstrating a continued need for the same services and skills. Without proof along these lines, the conceptual underpinnings of *McDonnell Douglas* would not remain recognizable. * * * A correct statement of the elements of a *McDonnell Douglas* prima facie case, adapted to present circumstances, therefore would have been that Loeb had to prove that he was in the protected age group, that he was performing his job at a level that met his employer's legitimate expectations, that he nevertheless was fired, and that [his employer] sought someone to perform the same work after he left. [*Loeb v. Textron, supra*, 600 F.2d at 1013–14 (citations and footnotes omitted).]

Halsell contends that he established a prima facie case of age discrimination according to the *McDonnell Douglas* factors as modified by *Loeb v. Textron*. Halsell, who was fifty-seven years old at the time of his discharge, fell within the age group protected by the ADEA, which applies to individuals between the ages of forty and seventy. *See* 29 U.S.C.A. § 631(a)(West Supp. 1982). After discharging Halsell on November 15, 1975, Kimtech appointed an engineer in his

mid-thirties as Halsell's replacement. Finally, Halsell contends that he was "qualified" for the job in the sense that he had performed his duties in a manner that met Kimberly-Clark's legitimate expectations. As evidence of his employer's satisfaction with his work, Halsell testified that he had received a ten percent pay increase two months prior to his discharge. Halsell also indicated that, after a year at the Orizaba project, he received a performance rating of "provisional," which he assumed indicated a temporary or contingent evaluation pending completion of the project.

Halsell maintains that this evidence amounted to a prima facie case of age discrimination, and therefore the district court improperly directed a verdict on his ADEA claim. We do not agree with Halsell's argument for two reasons. First, we doubt that Halsell has, in fact, established a prima facie case of age discrimination. Although the Supreme Court stated in *Burdine* that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous[,]" *Texas Department of Community Affairs v. Burdine, supra*, 450 U.S. at 253, 101 S.Ct. at 1094, the Court also ruled that "the plaintiff has the burden of proving *by the preponderance of the evidence* a prima facie case of discrimination." *Id.* at 252–53, 101 S.Ct. at 1093 (emphasis added).

To establish a prima facie case of discrimination, the plaintiff must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion. *See Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977); *Douglas v. Anderson, supra*, 656 F.2d at 532. In considering whether Halsell has produced sufficient evidence to support such an inference, this court must determine whether Halsell showed that he was qualified for the job in the sense that his performance met Kimberly-Clark's legitimate expectations. Halsell's evidence on this issue consisted solely of his testimony

that he had received a pay raise two months before his discharge and a performance rating of "provisional." We agree with the district court's determination that this evidence did not establish that Halsell was qualified for the job, and, thus, did not raise an inference of age discrimination.

Secondly, even assuming that Halsell presented a prima facie case of age discrimination, Kimberly-Clark's rebuttal overwhelmingly established its legitimate, nondiscriminatory reason for discharging Halsell.

■ The ADEA specifically provides that discharge of protected individuals for good cause shall not be unlawful. 29 U.S.C. § 623(f)(3)(1976). Moreover, establishment of a prima facie case of employment discrimination does not automatically entitle the plaintiff to a jury determination on the discrimination claim. The concept of "the prima facie case" outlined in *McDonnell Douglas* means only that the plaintiff has produced enough evidence to shift the burden of production to the defendant.

The phrase "prima facie case" may denote not only the establishment of a legally mandatory, rebuttable presumption, but also may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue. 9 J. Wigmore, Evidence § 2494 (3d ed. 1940). *McDonnell Douglas* should have made it apparent that in the Title VII context we use "prima facie case" in the former sense. [*Texas Department of Community Affairs v. Burdine, supra,* 450 U.S. at 254 n.7, 101 S.Ct. at 1094 n.7.]

In this case, Kimberly-Clark presented substantial evidence through cross-examination of plaintiff's witnesses, that it had legitimate reasons for discharging Halsell.

Kimberly-Clark had received repeated complaints from a variety of sources regarding Halsell's performance as project manager. John Tinnell, Kimtech's president, testified for Kimberly-Clark[5] that various Kimtech engineers had complained about Halsell's failure to provide them with adequate information or guidance, and the lack of an overall schedule for the project. Tinnell also stated that Kimberly-Clark de Mexico's expressions of concern about Halsell's inability to keep the project on schedule contributed to Kimberly-Clark's decision to replace him. This evidence more than adequately satisfied Kimberly-Clark's burden of articulating a legitimate, nondiscriminatory reason for discharging Halsell.

Halsell argues, however, that the defendant's rebuttal evidence simply created a question of fact for the jury, but did not destroy the prima facie case. We do not agree. By satisfying its burden of production, Kimberly-Clark eliminated any inference of discrimination raised by Halsell's prima facie case. *See Texas Department of Community Affairs v. Burdine, supra,* 450 U.S. at 255 & n.10, 101 S.Ct. at 1094 & n.10 (if defendant carries burden of production, presumption of discrimination drops from case); *Smithers v. Bailar, supra,* 629 F.2d at 895 (inference of discrimination dissolves when employer shows legitimate nondiscriminatory reason for conduct).

We do not believe that the jury's verdict for Halsell on his breach of contract claim in any way affects our conclusion that Kimberly-Clark articulated a legitimate nondiscriminatory reason for discharging Halsell. The parties bear different burdens on the ADEA claim and the breach of contract claim. In an ADEA case, the defendant employer need not persuade the court that the proffered reason in fact justified the

---

**5.** The district court allowed Kimberly-Clark to present John Tinnell's testimony before Halsell had completed presentation of his case-in-chief. Although the court granted Kimberly-Clark's motion for a directed verdict at the close of Halsell's case-in-chief, we do not limit ourselves to the plaintiff's evidence in evaluating Halsell's ADEA claim on appeal. As other courts have noted, "*McDonnell Douglas* does

not require a three-step 'judicial minuet' of procedure." *Flowers v. Crouch-Walker Corp.,* 552 F.2d 1277, 1281 (7th Cir. 1977), *citing Sime v. Trustees of California State University and Colleges,* 526 F.2d 1112 (9th Cir. 1975).

In particular, we recognize no impediment to our consideration of Tinnell's testimony taken out of turn in evaluating Kimberly-Clark's rebuttal testimony.

discharge because the issue is not whether the reason articulated by the employer warranted the discharge, but whether the employer acted for a nondiscriminatory reason.

In *Douglas v. Anderson, supra,* the Ninth Circuit explained the relationship as follows:

> The issue of satisfactory job performance permeates the prima facie case as well as the rebuttal and pretext issues. In establishing a prima facie case, Douglas need only produce substantial evidence of satisfactory job performance sufficient to create a jury question on this issue. However, Hastings in rebuttal produced substantial evidence of unsatisfactory job performance as the legitimate nondiscriminatory reason for its action. The focus of the inquiry, at this point, was not a determination of whether Douglas was in fact performing his job adequately, but rather, whether there was sufficient evidence of unsatisfactory performance to be a legitimate concern of his employer. This differs from a determination that just cause existed for the termination because of unsatisfactory job performance, which would necessitate a finding that his job performance was unsatisfactory. In the case at hand, we are concerned not with whether Hastings was correct in its determination that Douglas's job performance was unsatisfactory, but only with whether this was the real reason for the termination and not a pretext for age discrimination. [*Douglas v. Anderson, supra,* 656 F.2d at 533 n.5.]

Following *Burdine,* the court in *Douglas v. Anderson* acknowledged that the employer carries its burden of production by introducing some evidence of a legitimate, nondiscriminatory reason for its action. Thus, the defendant bears a lesser burden in rebutting the plaintiff's prima facie case on the ADEA claim than in presenting a defense of good cause on a breach of contract claim.

■ A trial court should direct a verdict for an ADEA defendant only when no jury could reasonably conclude that age was a determining factor in the decision to discharge the plaintiff. *Douglas v. Anderson, supra,* 656 F.2d at 533. In affirming a directed verdict entered by the district court, the Ninth Circuit stated:

> We conclude that [the employer] did more than raise an issue of fact in satisfaction of its burden of production. The evidence that Douglas was discharged for a legitimate, nondiscriminatory reason is overwhelming and completely undermines any inference of discrimination that may have been raised through circumstantial evidence presented by Douglas. [*Douglas v. Anderson, supra,* 656 F.2d at 534.]

Our review of the record in the case before us reveals that Kimberly-Clark's rebuttal evidence similarly did more than create an issue of fact for the jury. Kimberly-Clark presented extensive evidence of its nondiscriminatory reasons for dissatisfaction with Halsell's performance as manager of the Orizaba project, which completely undercut any suggestion that Kimberly-Clark discharged Halsell because of his age. Kimberly-Clark more than rebutted any hint of age discrimination in Halsell's discharge so that a jury could not reasonably have found age discrimination a factor in his discharge. Accordingly, we affirm the directed verdict for Kimberly-Clark on the ADEA claim.[6]

---

**6.** We distinguish this case from *Tribble v. Westinghouse Electric Corp.,* 669 F.2d 1193 (8th Cir. 1982) in which another panel of this court affirmed the denial of a defendant-employer's motion for a directed verdict on an ADEA claim. In *Tribble,* the court stated that "[t]he mere fact that Westinghouse articulated a legitimate nondiscriminatory reason for its discharge of plaintiff does not mean that Westinghouse is entitled to have a verdict directed in its favor." *Id.* at 1196.

Unlike the case now before us, the plaintiff in *Tribble* had presented evidence from which the jury could infer that the plaintiff's age contributed to his discharge. "We believe that the jury could reasonably believe that age, as well as the [intracompany] reorganization, was a determining factor in Westinghouse's decision to eliminate Tribble's position and not hire Tribble into any other available job." *Id.* Accordingly, the court concluded that the district court had properly denied Westinghouse's mo-

## IV. Judgment N. O. V. on the Contract Claim.

### A. Kimberly-Clark's Failure to Move for a Directed Verdict at the Close of All the Evidence.

At the close of Halsell's case-in-chief, defendant Kimberly-Clark moved for a directed verdict on both the age discrimination and employment contract claims. After granting the motion on the ADEA claim, the court reserved decision on the motion for directed verdict regarding the contract claim.

When Kimberly-Clark had substantially completed presentation of its defense, but prior to Halsell's rebuttal evidence, the court held a conference on proposed instructions outside of the hearing of the jury. At that time, Kimberly-Clark renewed its motion for a directed verdict. The court indicated that Kimberly-Clark should wait until the end of the case to renew the motion, but asked that the record reflect that Kimberly-Clark had renewed its motion and that the court had again reserved decision on it.[7]

The evidence presented when the court resumed session was brief, and neither party introduced further evidence on the nature of the employment contract. Kimberly-Clark introduced part of a deposition concerning the reason for Halsell's discharge, and some answers Halsell made to interrogatories on the issue of damages. In rebuttal, Halsell testified in his own behalf regarding his performance as project manager.

The court then submitted the contract issue to the jury with interrogatories to which the jury responded as follows:

tion for a directed verdict on Tribble's ADEA claim.

Because Halsell failed to introduce evidence from which a jury could infer that his age was a factor in his discharge, our affirmance of the directed verdict in the instant case creates no inconsistency with *Tribble*.

**7.** The following exchange took place between the court and defense counsel:

INTERROGATORY NO. 1: Do you find from a preponderance of the evidence that Kimberly-Clark Corporation breached an employment contract it had with Henry Halsell?

ANSWER: Yes.

INTERROGATORY NO. 2: Answer this interrogatory only if you answered "yes" to Interrogatory No. 1.

Do you find from a preponderance of the evidence that the employment contract between Kimberly-Clark Corporation and Henry Halsell was an oral contract for personal services which was not to be performed within one year?

ANSWER: Yes.

INTERROGATORY NO. 3: Answer this interrogatory only if you answered "yes" to Interrogatory No. 1.

State the amount of any damages which you find from a preponderance of the evidence were sustained by Henry Halsell as a result of Kimberly-Clark Corporation's breach of contract.

ANSWER: $250,000.00

[*Halsell v. Kimberly-Clark Corp.*, 518 F.Supp. 694, 695 (E.D.Ark.1981).]

Kimberly-Clark moved for judgment notwithstanding the jury's answers to interrogatories numbers 1 and 3. The district court granted Kimberly-Clark judgment n. o. v. on the ground that Halsell's contract of employment was not for a specified time, and was therefore terminable at the will of either party. The court also held the award of damages grossly excessive.

Halsell appeals from the district court's entry of judgment n. o. v., contending, first, that Kimberly-Clark failed to move for a directed verdict at the close of all the evi-

[DEFENSE COUNSEL]: Can the record show that we renew our motion for a directed verdict.

THE COURT: Well, I think you had better let that wait until the end of the case. I don't believe it's the proper time to do that, but with the jury in here. We're not going to take any time and have them go out. I'm just going to say that let the record show you renew it and the Court makes the same ruling.

dence, as required by Fed.R.Civ.P. 50(b),[8] and thereby waived its right to move for judgment n. o. v.

■ We agree with Halsell's contention that a party may not move for a judgment n. o. v. without first having moved for a directed verdict at the close of all the evidence. *See Cargill, Inc. v. Weston*, 520 F.2d 669, 671 (8th Cir. 1975); *Tsai v. Rosenthal*, 297 F.2d 614, 618 (8th Cir. 1961). This prerequisite affords the party against whom the motion for a directed verdict is made an opportunity to cure any defects in proof, and enables the court to reexamine the issue *as a matter of law* if the jury returns a verdict contrary to the movant. *See Mutual Benefit Health & Accident Association v. Thomas*, 123 F.2d 353, 355 (8th Cir. 1941); 5A J. Moore, Moore's Federal Practice ¶ 50.08 (3d ed. 1982).

■ We note, however, that courts have taken a liberal view of what qualifies as a motion for a directed verdict in allowing a subsequent motion for judgment n. o. v. *See Moran v. Raymond Corp.*, 484 F.2d 1008, 1011 (7th Cir. 1973), *cert. denied*, 415 U.S. 932, 94 S.Ct. 1445, 39 L.Ed.2d 490 (1974); *Albrecht v. Herald Co.*, 452 F.2d 124, 127 (8th Cir. 1971); *Beaumont v. Morgan*, 427 F.2d 667, 670 (1st Cir.), *cert. denied*, 400 U.S. 882, 91 S.Ct. 120, 27 L.Ed.2d 121 (1970); *United States v. 353 Cases*, 247 F.2d 473, 477 (8th Cir. 1957). Although the movant fails to renew its motion for a directed verdict at the conclusion of all the evidence, a court may nevertheless grant judgment n. o. v. if the evidence introduced after the motion for directed verdict was

brief, and the court somehow indicated that renewal of the motion would not be necessary to preserve the right to move for judgment n. o. v. *See Bayamon Thom McAnn, Inc. v. Miranda*, 409 F.2d 968, 972 (1st Cir. 1969).

■ In this case, Kimberly-Clark attempted to renew its motion for a directed verdict during the instruction conference on the afternoon of the third and final day of trial. Because the parties had not finished presenting all the evidence, the court advised the defendant that the proper time to renew the motion would be at the close of all the evidence. At the same time, however, the court stated that it considered the motion renewed.

We believe the district court's comment indicated to Kimberly-Clark that it need not move for a directed verdict again at the close of all the evidence to preserve its right to move for judgment n. o. v. Furthermore, the evidence introduced subsequent to the motion for directed verdict did not relate to the nature of the employment contract, and therefore did not affect the contract issue on which Kimberly-Clark sought a directed verdict.

■ In addition, Halsell did not raise this objection to Kimberly-Clark's motion for judgment n. o. v. at the time of its making. When the Seventh Circuit considered a case in a similar procedural posture, it stated: "We do not view favorably the raising of an issue, particularly a technical one, for the first time on appeal." *Moran v. Raymond Corp., supra*, 484 F.2d at 1011. We likewise are unwilling to allow

---

8. Rule 50(b), Fed.R.Civ.P. provides:

(b) *Motion for Judgment Notwithstanding the Verdict.* Whenever a motion for a directed verdict *made at the close of all the evidence* is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such

party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial. [Emphasis added.]

Halsell's belated objection to overcome Kimberly-Clark's substantial compliance with Fed.R.Civ.P. 50(b). Consequently, we believe the district court properly entertained Kimberly-Clark's motion for judgment n. o. v.

### B. *Entry of Judgment N. O. V.*

Halsell challenges the district court's entry of judgment n. o. v. on the ground that substantial evidence supported the jury's responses to interrogatories 1 and 3. The jury responded affirmatively to interrogatory number 1, finding that Kimberly-Clark had breached its employment contract with Henry Halsell. The district court, nevertheless, granted Kimberly-Clark judgment n. o. v. because

> the contract of employment was not for a specified time, under the undisputed evidence in this case. It was, therefore, terminable at the will of either party. In this regard the law of Arkansas and of Wisconsin (where the plaintiff was hired) is the same. [*Halsell v. Kimberly-Clark Corp.*, 518 F.Supp. 694, 695 (E.D.Ark. 1981).]

■ In determining whether a party is entitled to judgment notwithstanding an adverse jury verdict, the trial court must view the evidence in the light most favorable to the party who prevailed before the jury. *Walsh v. Ingersoll-Rand Co.*, 656 F.2d 367 (8th Cir. 1981). The court should grant a motion for judgment n. o. v. if, without weighing the witnesses' credibility, only one reasonable conclusion follows from the evidence presented. *Davis v. Burlington Northern, Inc.*, 541 F.2d 182, 186 (8th Cir.), *cert. denied,* 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 613 (1976).

■ In entering a judgment n. o. v., the district court ruled that, as a matter of law, the parties had not presented sufficient evidence to create an issue for the jury. Here, the court determined that under either Wisconsin or Arkansas law, the employment contract between Henry Halsell and Kimberly-Clark was terminable at will of either party. Under Wisconsin law (lex locus con-

tractus) an employment relation continues at the will of either party in the absence of a specific contractual limitation. *See Hanson v. Chicago, Burlington and Quincy Railroad,* 282 F.2d 758 (7th Cir. 1960); *Ward v. Frito-Lay, Inc.,* 95 Wis.2d 372, 290 N.W.2d 536 (1980); *Goff v. Massachusetts Protective Association,* 46 Wis.2d 712, 176 N.W.2d 576 (1970); *Forrer v. Sears, Roebuck & Co.,* 36 Wis.2d 388, 153 N.W.2d 587 (1967). Arkansas law (lex fori) also makes a contract of employment terminable at the will of either party if it contains no agreement as to a specific length of time. *See Tinnon v. Missouri Pacific Railroad,* 282 F.2d 773 (8th Cir. 1960). *M.B.M. Co. v. Counce,* 596 S.W.2d 681 (Ark.1980); *Miller v. Missouri Pacific Transportation Co.,* 283 S.W.2d 158 (Ark.1955); *Petty v. Missouri & Arkansas Railway,* 205 Ark. 990, 167 S.W.2d 895, *cert. denied,* 320 U.S. 738, 64 S.Ct. 37, 88 L.Ed. 437 (1943).

In this case, the district court concluded that the employment agreement between Halsell and Kimberly-Clark was not for a specified time, "under the undisputed evidence in this case." *Halsell v. Kimberly-Clark Corp., supra,* 518 F.Supp. at 695.

■ Halsell argues on appeal that the parties disputed the duration of his employment contract with Kimberly-Clark. Halsell maintains that he offered evidence to support his contention that he had a contract of definite duration; that his employment would end when he reached retirement age. Kimberly-Clark, by contrast, alleged that it had hired Halsell for an indefinite period of time.

We cannot accept Halsell's assertion that the parties had presented conflicting evidence as to the *duration* of Halsell's employment contract. Halsell failed to produce any evidence that Kimberly-Clark had hired him for a definite period of time. The advertisement to which he responded stated that the employee would be "a permanent member of the staff," but that language merely indicated that the company did not seek to hire a manager for a single project only. Moreover, Halsell sought but failed to secure a written em-

ployment contract from Kimberly-Clark.[9] Halsell's assertion that he was hired until the time he would have to retire amounts to a conclusory statement without evidentiary support. He could have shown such a definite period of employment by showing, for example, that Kimberly-Clark had hired him to complete a particular project. Halsell maintained throughout this lawsuit, however, that Kimberly-Clark did not employ him to supervise the Orizaba project only.

The district court indicated in its opinion that it would have directed a verdict for Kimberly-Clark at the close of the case, but reserved its ruling in accordance with the preferred practice of submitting such questions to the jury. *See Halsell v. Kimberly-Clark Corp., supra*, 518 F.Supp. at 695. Because the same standard applies to a motion for judgment n. o. v. as to a motion for a directed verdict, *Smith v. Hussmann Refrigerator Co.*, 619 F.2d 1229, 1235 (8th Cir.) (*en banc*), *cert. denied*, 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980); *Schneider v. Chrysler Motors Corp.*, 401 F.2d 549, 554 (8th Cir. 1968), the court determined that Kimberly-Clark was entitled to a judgment n. o. v. as a matter of law.

After reviewing the record, we agree with the district court's conclusion that the facts presented at trial establish that Kimberly-Clark employed Halsell for an indefinite period of time. Thus, the employment was terminable at the will of either party. Having affirmed the district court's entry of judgment n. o. v. in favor of Kimberly-Clark, we need not review the district court's ruling on damages.

### V. Conclusion.

We affirm the district court's rulings on all of Henry Halsell's claims against Kimberly-Clark. The district court properly entered summary judgment on Halsell's defamation claim. After reviewing the record in this case, we also believe the district court acted properly in directing a verdict in favor of Kimberly-Clark on Halsell's ADEA claim. Finally, we affirm the district court's entry of judgment n. o. v. on Halsell's contract claim.

Affirmed.

---

**9.** The district court observed in its opinion that [i]n fact in plaintiff's own notes, made shortly after his termination, and verified by him on the witness stand, he wrote as follows: "I had bargained for higher pay, for pension rights and for an employment contract but without any success." [*Halsell v. Kimberly-Clark Corp., supra*, 518 F.Supp. 695.]